195 F.3d 894 (7th Cir. 1999)
 Missey Jefferson, et al., on behalf of themselves and a class of others similarly situated, Plaintiffs-Respondents,
v.
Ingersoll International Inc., et al., Defendants-Petitioners.
 No. 99-8032
 United States Court of Appeals, Seventh Circuit
 Submitted October 8, 1999
Decided October 25, 1999
 
 On Petition for Leave to Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 98 C 50042--Philip G. Reinhard, Judge.[Copyrighted Material Omitted]
 Before Coffey, Easterbrook, and Kanne, Circuit Judges.
 Easterbrook, Circuit Judge.
 
 
 1
 Plaintiffs contend in this suit under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, that Ingersoll International and affiliated companies discriminated on account of race in considering applications for employment. It is a pattern-or-practice suit, and like most similar claims of persistent discrimination affecting large numbers of persons was filed as a class action. The district court certified a class limited to persons who actually applied for employment but were turned down; the court rejected plaintiffs' effort to include in the class persons discouraged from applying. It also declined to certify classes of employees who were not promoted, or whose compensation allegedly was depressed because of their race; these groups of employees were not sufficiently numerous to justify class handling, the court explained. The opinion, 1999 U.S. Dist. Lexis 13126 (N.D. Ill. 1999), is a careful and measured treatment of the class-certification issue. But one part of the disposition is problematic and is the focus of defendants' petition for leave to take an interlocutory appeal under Fed. R. Civ. P. 23(f). See Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999).
 
 
 2
 Plaintiffs seek an injunction that would require Ingersoll to change its hiring practices. That relief, if granted, would affect applicants as a group, and plaintiffs therefore sought certification under Fed. R. Civ. P. 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole". For many years Rule 23(b)(2) was the normal basis of certification in Title VII pattern-or-practice cases. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997) (describing civil rights suits "against parties charged with unlawful, class-based discrimination" as "prime examples" of actions properly certified under Rule 23(b)(2)). When this tradition took hold, however, Title VII allowed only equitable relief and therefore nicely fit the language of Rule 23(b)(2). True enough, class members could receive money, because back pay is a form of equitable relief, but this relief was treated as incidental to the injunction--and, because it was deemed equitable, neither side had a right to jury trial, so that handling the suit as a consolidated proceeding in equity did not threaten anyone's rights.
 
 
 3
 After the Civil Rights Act of 1991, however, prevailing plaintiffs in a Title VII suit are entitled not only to equitable relief but also to compensatory and punitive damages. 42 U.S.C. sec.1981a(a)(1), (b). Either side may demand a jury trial if the plaintiff seeks damages. 42 U.S.C. sec.1981a(c). Because the representative plaintiffs seek both compensatory and punitive damages, Ingersoll contended that any class should be certified under Rule 23(b)(3) rather than Rule 23(b)(2). If the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf. See Fed. R. Civ. P. 23(c)(2). If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out. Because of this difference, Rule 23(b)(2) gives the class representatives and their lawyers a much freer hand than does Rule 23(b)(3). Although class members who want control of their own litigation are vitally concerned about the choice, so too are defendants--for the final resolution of a suit that proceeds to judgment (or settlement) under Rule 23(b)(2) may be collaterally attacked by class members who contend that they should have been notified and allowed to proceed independently. Defendants who want the outcome of a damages action (no matter which side wins) to be conclusive favor Rule 23(b)(3), because it alone insulates the disposition from collateral attack by dissatisfied class members.
 
 
 4
 In the district court the parties joined issue on the question when, if at all, a suit may proceed under Rule 23(b)(2) if the plaintiffs seek not only equitable relief but also substantial money damages. All the district judge said on this subject, however, is that Rule 23(b)(2) is well suited to pattern-or-practice suits, which no one doubts. The judge wrapped up: "Because the court has determined that the hiring class is properly certified under Rule 23(b)(2), it need not address the applicability of subsection (b)(3)." It is this decision that Ingersoll wants us to review by interlocutory appeal under Rule 23(f). This issue fits the third category of appropriate appeals discussed in Blair, 181 F.3d at 835--situations in which the legal question is important, unresolved, and has managed to escape resolution by appeals from final judgments. Both sides cite a welter of district court decisions (many in this circuit) addressing the subject, but none has reached this court since the Civil Rights Act of 1991, and only one has reached another court of appeals. See Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998). Thus we grant the petition for leave to appeal. Moreover, because the petition and the response lay out the legal arguments, further briefing is unnecessary. We have seen enough to know that the district court must confront rather than dodge the fundamental legal question.
 
 
 5
 Earlier this year the Supreme Court stressed that proper interpretation of Rule 23, principles of sound judicial management, and constitutional considerations (due process and jury trial), all lead to the conclusion that in actions for money damages class members are entitled to personal notice and an opportunity to opt out. Ortiz v. Fibreboard Corp., 119 S. Ct. 2295, 2314-15 (1999). This entitlement may be overcome only when individual suits would confound the interest of other plaintiffs--when, for example, there is a limited fund that must be distributed ratably, the domain of Rule 23(b)(1), or when an injunction affects everyone alike, the domain of Rule 23(b)(2). Ortiz disapproved a creative use of Rule 23(b)(1) that employed the "limited fund" rationale to eliminate notice and opt-out rights; the Court's analysis applies equally when a request for an injunction is being used to override the rights of class members to notice and an opportunity to control their own litigation.
 
 
 6
 Rule 23(b)(2) authorizes a no-notice and no-opt- out class for "final injunctive relief or corresponding declaratory relief [that operates] with respect to the class as a whole". In such a situation class certification protects the missing class members by obliging the representatives (and their counsel) to act as fiduciaries of the other affected persons. Money damages under sec.1981a(b) are neither injunctive nor declaratory, and they do not affect a class as a whole. It is possible for one applicant for employment to recover substantial damages while another recovers nothing (for example, because the second person would have been rejected under nondiscriminatory conditions, or found a better job elsewhere). Class members sensibly may decide that direct rather than vicarious representation is preferable, and they may reject the aid of self-appointed fiduciaries. Rule 23(c)(2) gives them that right.
 
 
 7
 It is an open question in this circuit--and in the Supreme Court, see Ticor Title Insurance Co. v. Brown, 511 U.S. 117, 121 (1994)--whether Rule 23(b)(2) ever may be used to certify a no-notice, no-opt-out class when compensatory or punitive damages are in issue. See also Blair, 181 F.3d at 839 ("If damages are at issue, how can Rule 23(b)(2) be used to avoid opt-outs and notice?"). Rule 23(b)(2) is designed for all-or-nonecases in which "final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Advisory Committee's Note explaining Rule 23(b)(2). Rule 23(b) begins by saying that an action "may" be maintained as a class action when the prerequisites of subdivision (a) and a part of subdivision (b) have been satisfied; it does not say that the class must be certified under the first matching subsection. A court should endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list. When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out.
 
 
 8
 Divided certification also is worth consideration. It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects. Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), would require the district judge to try the damages claims first, to preserve the right to jury trial, a step that would complicate the management of separate classes--and mean, as a practical matter, that the damages claims and the Rule 23(b)(3) class would dominate the litigation--but the damages-first principle holds even when there is a single class under a single subdivision of Rule 23. That the seventh amendment gives damages the dominant role just strengthens the conclusion that Rule 23(b)(3) must be employed. Instead of divided certification--perhaps equivalently to it--the judge could treat a Rule 23(b)(2) class as if it were under Rule 23(b)(3), giving notice and an opportunity to opt out on the authority of Rule 23(d)(2). See Williams v. Burlington Northern, Inc., 832 F.2d 100, 103 (7th Cir. 1987).
 
 
 9
 If Rule 23(b)(2) ever may be used when the plaintiff class demands compensatory or punitive damages, that step would be permissible only when monetary relief is incidental to the equitable remedy--so tangential that the principle of Beacon Theatres and Dairy Queen does not apply, and that the due process clause does not require notice. On this subject we agree with the fifth circuit's principal holding in Allison, 151 F.3d at 411-16. As the Advisory Committee put it: "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Since 1966, when the Advisory Committee penned this Note, the Supreme Court regularly has emphasized the importance of allowing affected persons to opt out of representative suits, see Ortiz, 119 S. Ct. at 2315; South Central Bell Telephone Co. v. Alabama, 119 S. Ct. 1180, 1184-85 (1999); Richards v. Jefferson County, 517 U.S. 793, 799- 802 (1996); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985), as have we, see Tice v. American Airlines, Inc., 162 F.3d 966, 972-73 (7th Cir. 1998); Pabst Brewing Co. v. Corrao, 161 F.3d 434, 439 (7th Cir. 1998). Changes made by the Civil Rights Act of 1991 raise the monetary stakes in suits of this sort, and thus tilt the balance toward certification under Rule 23(b)(3).
 
 
 10
 Plaintiffs say that a short statement in connection with the denial of rehearing in Allison, 151 F.3d at 434, overcomes what the fifth circuit said in the body of that opinion. We do not read it so; the order appears to suggest the possibility of a partial or split class certification, just as we did above, so that a class under Rule 23(b)(2) could seek injunctive relief while notice and opt-out rights were preserved for damages issues. But no matter what the panel in Allison may have meant by its order, the controlling authority today is Ortiz, which says in no uncertain terms that class members' right to notice and an opportunity to opt out should be preserved whenever possible. It is possible to preserve those rights in this case.
 
 
 11
 The district court must squarely face and resolve the question whether the money damages sought by the plaintiff class are more than incidental to the equitable relief in view. If the answer is yes, then the district court should either certify the class under Rule 23(b)(3) for all purposes or bifurcate the proceedings-- certifying a Rule 23(b)(2) class for equitable relief and a Rule 23(b)(3) class for damages (assuming that certification under Rule 23(b)(3) otherwise is sound, a question we do not broach). If, however, the district judge believes that the damages sought here are merely incidental to the equitable relief, then the judge must face and resolve the question that we have elided: whether certification of a class under Rule 23(b)(2) ever is proper when the class seeks money damages (as opposed to equitable monetary relief such as back pay). The district judge may consider following still a third course on remand: modifying or vacating the class certification now that the Equal Employment Opportunity Commission has appeared as plaintiffs' champion.
 
 
 12
 Shortly after Ingersoll filed its petition for leave to appeal, the EEOC asked the district court for permission to intervene as an additional plaintiff. General Telephone Co. v. EEOC, 446 U.S. 318 (1980), holds that, as the plaintiff in a pattern-or-practice suit under sec.706(f)(1) of Title VII, 42 U.S.C. sec.2000e-5(f)(1), the EEOC may seek classwide relief without regard to the standards of Rule 23, for the EEOC does not act on behalf of private parties and a suit under sec.706(f)(1) is not a class action. The private plaintiffs contend that the EEOC's intervention moots the dispute about the use of Rule 23(b)(2). No, it does not make the subject moot, for the EEOC may not seek (or the district judge may not award) the same relief that the private plaintiffs want in their class action. The EEOC could dismiss its action or settle with Ingersoll on terms that leave the private plaintiffs dissatisfied. Section 706(g) permits the court to award equitable relief (including back pay) in an action prosecuted by the EEOC, see sec.2000e-5(g), but this subsection, which was not amended as part of the 1991 Act, does not mention compensatory or punitive damages. Although sec.1981a(d)(1) defines the EEOC as a "complaining party" for purposes of damages under sec.1981a(a), this is conditioned on inability to recover under 42 U.S.C. sec.1981, and many of the class members advance sec.1981 claims. Thus the Commission may or may not be able to obtain on behalf of the class the full extent of monetary relief, and it may not attempt to secure all legally available relief. Disappointed job applicants may find that their own suit remains useful. Whether to maintain parallel litigation is their choice: the Court concluded in General Telephone that "where the EEOC has prevailed in its action, the court may reasonably require any individual who claims under its judgment to relinquish his right to bring a separate private action." 446 U.S. at 333. The Court did not hold that an action by the EEOC supersedes pending private litigation or disables victims of discrimination from preferring relief under sec.1981a(b) to whatever relief the Commission secures. The agency's claim is both logically and legally distinct from the private suit. Cf. EEOC v. G-K-G, Inc., 39 F.3d 740 (7th Cir. 1994) (if the EEOC files suit while private litigation is under way, the district judge may elect to give the private plaintiff the lead role and relegate the EEOC to the status of litigating amicus); Colby v. J.C. Penney Co., 811 F.2d 1119 (7th Cir. 1987) (a private plaintiff may prevail even when the EEOC loses its parallel action).
 
 
 13
 What is more, the fact that the EEOC chose to intervene in an ongoing case-whichassuredly is a class action-- may affect the application of General Telephone. Compare Horn v. Eltra Corp., 686 F.2d 439, 441 n.1 (6th Cir. 1982) (holding that the approach of General Telephone is limited to cases in which the EEOC initiates the suit on its own behalf), with Harris v. Amoco Production Co., 768 F.2d 669, 683 (5th Cir. 1985), and United Telecommunications, Inc. v. Saffels, 741 F.2d 312, 314 (10th Cir. 1984) (disagreeing with Horn). We do not choose sides; it is enough to say that the existence of this conflict is yet another reason why the EEOC's filing does not cast Rule 23 out of the picture. Nonetheless, if the plaintiffs continue to believe that the EEOC's appearance makes the class allegations of their complaint irrelevant, then they are free to withdraw the request to represent a class, subject to the court's approval under Rule 23(e), or the district judge may adjust his class certification in light of the EEOC's position to reflect the likelihood that the private action is now effectively limited to the pursuit of compensatory and punitive damages.
 
 
 14
 The district court's order concerning class certification is vacated, and the case is remanded for further proceedings consistent with this opinion.