In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1973 & 99-2122

Lawrence Crawford, on behalf of himself
and a class of others similarly situated,

Plaintiff-Appellee,

v.

Equifax Payment Services, Inc.,
and Equifax Check Services, Inc.,

Defendants-Appellees.


Appeals of:

   Beverly Blair and Latressa Wilbon,

Proposed Intervenors.


Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 4240--Sidney I. Schenkier, Magistrate Judge.


Submitted December 7, 1999--Decided January 3, 2000


   Before Posner, Chief Judge, and Easterbrook and
Rovner, Circuit Judges.

   Easterbrook, Circuit Judge.  These appeals are
successive to Blair v. Equifax Check Services,
Inc., 181 F.3d 832 (7th Cir. 1999). Plaintiffs in
three class actions contend that Equifax Check
Services mailed debt-collection letters that
violate 15 U.S.C. sec.sec. 1692e and 1692g, parts
of the Fair Debt Collection Practices Act.
Details of the claims are not important. Lawrence
Crawford filed suit first, in June 1997. Beverly
Blair filed a similar suit in December 1997, and
Latressa Wilbon filed the third suit in August
1998. All three plaintiffs sought to represent a
class of debtors who had received letters from
Equifax. Blair and Wilbon were consolidated
before District Judge Plunkett, who certified
both as class actions on February 25, 1999.
Crawford was handled separately. On March 3,
1999, Magistrate Judge Schenkier, presiding by
consent under 28 U.S.C. sec.636(c),

simultaneously certified Crawford as a class action and tentatively approved a settlement. The class certified in Crawford is much more comprehensive than the classes certified in Blair and Wilbon; all members of the Blair and Wilbon classes are members of the Crawford class. One feature of the Crawford settlement is that members of the class lose their right to class handling of claims for damages. On this basis Equifax asked Judge Plunkett to decertify Blair and Wilbon. He declined, and we affirmed. Our opinion in Blair holds that unless the Crawford settlement is finally approved, Blair and Wilbon are entitled to pursue their own actions. Blair and Wilbon attempted to intervene in Crawford to oppose the settlement, but Magistrate Judge Schenkier denied their motions and then finally approved the settlement. We have for decision two appeals: the first contests the denial of the motions to intervene, and the second--whose propriety is contingent on the success of the first, see Marino v. Ortiz, 484 U.S. 301, 304 (1988); Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998), affirmed by an equally divided Court under the name California Public Employees' Retirement System v. Felzen, 525 U.S. 315 (1999)--challenges the settlement's approval.

Debt-collection letters that violate sec.1692g expose the debt collector to actual damages plus a penalty up to $1,000. In a class action the total damages cannot exceed $500,000 or 1% of the debt collector's net worth, whichever is less. 15 U.S.C. sec.1692k(a). All three of the class actions sought these financial penalties. Magistrate Judge Schenkier's order certifying the Crawford class and tentatively approving a settlement nonetheless provided that the class would proceed under Fed. R. Civ. P. 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole", rather than under Rule 23(b)(3), which is designed for cases seeking money damages. The plan was that none of the Crawford class members would receive personal notice or be allowed to opt out, rights they would have enjoyed if the class had been certified under Rule 23(b)(3) (as Blair and Wilbon were). The substantive terms of the settlement are these:

Equifax will never again use the form letters that plaintiffs say violate sec.1692g.

Crawford will receive $500 as damages, plus a $1,500 "incentive award" for serving as the class representative.

> Equifax will donate $5,500 to the Legal
> Clinic of Northwestern University Law School
> for use in protecting consumers' rights.
>
> Equifax will pay reasonable attorneys' fees
> (later fixed at $78,000) for the services of
> Crawford's attorney.
>
> Rights of all class members other than
> Crawford to seek damages are unaffected--they
> receive nothing in this case but are free to
> file their own suits, provided, however, that
> no other suit may proceed as a class action.

Blair and Wilbon deem these terms inadequate. Members of the class other than Crawford receive no relief for harms that may already have been done. They gain nothing (the settlement does not include a concession of liability that would facilitate individual suits), but lose something: the possibility of any collective proceeding for damages. Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed. Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 809 (3d Cir. 1995). Unsurprisingly, Blair and Wilbon opposed this settlement, which did them (and other members of the classes they represent) no favors. Whether it caused them injury depends on the merits, a subject on which we express no view. Perhaps Crawford settled for a pittance because plaintiffs' claim is weak, or because Equifax would be entitled to a setoff or counterclaim, on account of the bad debts, exceeding any recovery. See Channell v. Citicorp National Services, Inc., 89 F.3d 379 (7th Cir. 1996).

To have recourse to this court if the settlement should be approved over their objections, Blair and Wilbon had to become parties, which they sought to do on March 26, 1999, by filing motions to intervene. Although these motions were filed only 23 days after the class had been certified, and before the deadline for objecting to the terms of the settlement, Magistrate Judge Schenkier denied them, ruling that Blair and Wilbon should have acted sooner-- indeed, that they should have moved to intervene in August 1998, as soon as their lawyer learned of the suits' overlap. Although the parties debate when counsel first learned that the Crawford class could be a superset of the Blair and Wilbon classes, we need not address that issue. Let us assume that Blair and Wilbon knew from the get-go about the relation among the classes. Why should that have prompted intervention? The class device is designed to

avoid the need for class members to become parties.

A representative plaintiff acts as fiduciary for the others. Only when the class members suspect that the representative is not acting in their best interests is there a need to intervene. This means that delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings. United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977) (intervention by a member of the class is timely when the intervenor acts "as soon as it [becomes] clear . . . that the interests of the unnamed class members would no longer be represented by the named class representatives"). Unnamed members of the class rarely will suspect a shortfall in the adequacy of representation before learning of the terms of a (potentially inadequate) settlement or problems in the class definition--and given the possibility of opt-out, even that may not occasion intervention. Until March 1999 Blair and Wilbon had every reason to suppose that they would be entitled to opt out as of right; Crawford's pleadings sought certification under Rule 23(b)(3), and the switch to Rule 23(b)(2) was a last-minute change.

As a rule the time for unnamed members of the class to intervene can not commence until notice under Rule 23; but in this case the class members never received personal notice, either of the class certification or of the settlement. The district court violated Rule 23(c)(1): "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Apparently Crawford and Equifax agreed to delay the certification and notice, and the court went along despite the language of the rule. Equifax, which moved to consolidate Blair with Wilbon, did not inform the district court of the overlap between Crawford and the other cases, and the lack of a formal certification made it hard for third parties to deduce the overlap. These maneuvers are not sound reasons to ensnare class members; if the court itself could not define the Crawford class until March 3, 1999, why should unnamed class members be deemed to have had earlier knowledge of its scope? Although counsel for Blair and Wilbon acquired actual knowledge of the settlement despite the lack of notice, no one contends that counsel tarried unduly thereafter. The district court abused its discretion by concluding that the motions to intervene were untimely.

Magistrate Judge Schenkier gave a second reason for denying the motions: that the appearance of Blair and Wilbon would cause "prejudice" in

Crawford by upsetting the settlement. The premise of this conclusion is a belief that simply by becoming parties Blair and Wilbon could nix the deal by withholding their assent. This belief is not correct: Crawford, not Blair or Wilbon, had been certified to represent the Crawford class, and only the representative's approval is essential to settlement. Blair and Wilbon wanted to intervene so that they could appeal if the court approved the settlement under Rule 23(e) despite their objections; they recognized that a settlement had been reached already. Thus even if there were reason to doubt the proposition that an intervenor can't usurp the class representative's prerogatives, the magistrate judge could have avoided any problem by limiting the extent of the intervenors' rights to objecting and, if necessary, appealing. The possibility that we would see merit to their appeal cannot be called "prejudice"; appellate correction of a district court's errors is a benefit to the class. Because only parties may appeal, it is vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision. So in the end, it does not matter whether intervention would come under Fed. R. Civ. P. 24(a) or (b), or what the standard of appellate review may be; the magistrate judge's order cannot survive even the most deferential kind of review.

Nor can the settlement itself survive. Ortiz v. Fibreboard Corp., 119 S. Ct. 2295, 2314-15 (1999), and Jefferson v. Ingersoll International, Inc., No. 99-8032 (7th Cir. Oct. 25, 1999), show that the class members ordinarily are entitled to personal notice and an opportunity to opt out of representative actions for money damages--which the Crawford case is, even though most of the money went to Crawford's lawyer. Both Ortiz and Jefferson stress that these rights are based on the seventh amendment and the due process clause of the fifth amendment, as well as on the terms of Rule 23. Crawford contends that Ortiz does not apply to a settlement approved before the date on which Ortiz was issued, a frivolous position given the rule that principles applied in the cases that announce them (as Ortiz and Jefferson were) govern all other pending cases too. Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993); James B. Beam Distilling Co. v. Georgia, 501 U.S. 529 (1991). Anyway, Ortiz and Jefferson are not exactly novelties. Rule 23 itself limits no-opt-out classes to the situations described in Rule 23(b)(1) and (2), which Crawford does not meet: all private actions under the Fair Debt Collection Practices Act are for damages. See 15 U.S.C. sec.1692k and Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 834 (11th Cir.

1982). Recognition that notice and an opportunity to opt out are vital to most representative actions for damages is of long standing. See Richards v. Jefferson County, 517 U.S. 793, 799–802 (1996); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-75 (1974); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); Hansberry v. Lee, 311 U.S. 32, 42-45 (1940).

All questions of notice and opt-out aside, the settlement is substantively troubling. Crawford and his attorney were paid handsomely to go away; the other class members received nothing (not even any value from the $5,500 "donation") and lost the right to pursue class relief. By agreeing to a class definition so broad that it included anyone who was sent a letter "similar" to the one he had received, Crawford consented to a class of approximately 214,000 members, which ensured that none could recover much-- recall that the cap under sec.1692k(a)(2)(B)(ii) is $500,000, implying a maximum award of $2.34 apiece, and if Equifax's net worth is less than $50 million then the cap is even lower. Blair and Wilbon, by contrast, have been certified to represent smaller classes for which the cap could be as high as $250 per debtor, holding out some prospect of a net judgment after Equifax's setoff rights. Although Magistrate Judge Schenkier stated that the prospective part of the deal is valuable to the class, Blair and Wilbon believe that Equifax stopped using the challenged letters early in 1998. Given the litigation risk, Equifax is not apt to employ them again no matter what the settlement provides. Even if Equifax's promise is of some value to debtors in the future, the change in form letters is useful to class members only if they again write bad checks that Equifax has verified. For persons who stay out of financial trouble, only damages matter, yet all the settlement does for (to?) them is cut them off at the knees. They gain nothing, yet lose the right to the benefits of aggregation in a class. Magistrate Judge Schenkier concluded that Crawford's attorney was a vigorous champion of the class, despite the appearance that for $78,000 he sold out the class. Even so, the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e).

The order denying intervention is reversed, as is the order approving the settlement. Circuit Rule 36 will apply on remand. The district court is instructed to assign Crawford, Blair, and Wilbon to a single judge for consolidated proceedings.