Errata to Concurrence Filed: June 27, 2003

Parker v. Time Warner
Docket No. 01-9069


JON O. NEWMAN, Circuit Judge, concurring:

A complaint alleging that up to 12 million cable television subscribers may each be entitled to receive at least $1,000 for violations of their statutorily protected privacy rights presents class action issues in a context unusual even for modern class action litigation.  The Court remands for further consideration the District Court's decision to deny class certification.  I concur in that decision and agree with most of Judge Underhill's opinion.  I write these additional views to explore matters affecting both the (b)(2) and (b)(3) aspects of this case.  I am somewhat doubtful about the possibility of a (b)(2) class that would include monetary claims but believe that there are strong arguments favoring a (b)(3) class. More specifically, I think a district court has discretion to certify a (b)(3) class with the aggregate amount of statutory damages limited substantially below what a literal application of the statute might seem to require.

1. (b)(2) Issues

Rule 23(b)(2) of the Federal Rules of Civil Procedure provides that if the threshold prerequisites of Rule 23(a) are met, a class action may be maintained if

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2). Although the text of the (b)(2) provision focuses on the appropriateness of injunctive or declaratory relief, the drafters contemplated that a claim for money damages would not necessarily preclude class certification under (b)(2). They cautioned, however, that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Id. advisory committee's note (1966) (emphasis added). In a case such as the pending one, in which damages are sought in addition to injunctive and declaratory relief, the (b)(2) certification issue turns largely on whether the final relief relates "predominantly" to money damages.

Some courts have ruled that monetary relief predominates "unless it is incidental to requested injunctive or declaratory relief." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998); see also Barabin v. Aramark Corp., No. 02-8057, 2003 WL 355417, at *1-*2 (3d Cir. Jan. 24, 2003) (adopting the Allison approach to incidental damages); Jefferson v. Ingersoll International Inc., 195 F.3d 894, 898 (7th Cir. 1999) (same). "Incidental" damages have been said to be those "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief," Allison, 151 F.3d at 415, and "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class

-2-

member's circumstances," id.

   As Judge Underhill's opinion recognizes, however, this Court has rejected the Fifth Circuit's limitation of (b)(2) to claims for "incidental" damages, see Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162-67 (2d Cir. 2001), outlining instead a broader "ad hoc approach," id. at 164, that obliges a district court to consider numerous factors in making the ultimate certification decision. Robinson explicitly contemplated the possibility that a (b)(2) class might be appropriate where monetary relief that is non-incidental would "present[] individual specific damage issues." Id. at 166. The risk that such certification might create due process concerns was answered by the possibility of "affording notice and opt out rights to absent class members for . . . the damages phase of the proceedings." Id. In addition, Robinson held that damages relief obstacles to (b)(2) certification can be overcome by using the authority of Rule 23(c)(4) to certify a class action "with respect to particular issues," Fed. R. Civ. P. 23(c)(4), specifically, a class action with respect only to liability. Robinson, 267 F.3d at 167-69.

   Although I am obliged to accept Robinson as the law of this Circuit, I think it risks some inappropriate uses of (b)(2) certification. That provision is designed for claims for injunctive and declaratory relief. The (b)(3) class, with its opt-out protection, is available for monetary claims. In some limited situations, a (b)(2) class might be appropriate notwithstanding a monetary claim, but, prior

-3-

to Robinson, I would have thought such cases to be rare. See Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (observing that implementing opt-out rights in the context of Rule 23(b)(2) class is undesirable, and certifying the class under Rule 23(b)(3) instead). In particular, I question whether we risk unduly extending (b)(2) in cases with monetary claims by inviting district judges to use it and then protect claimants with individualized damage amounts either by affording them opt-out rights or certifying only the liability issue. Such devices strike me as a way of undermining the (b)(3) requirement that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Even though, in light of Robinson, the pending case must be remanded for further consideration of (b)(2) certification, I have additional concerns as to the guidance the Court offers to the District Court. Although recognizing that monetary claims need not be "incidental" for (b)(2) certification and correcting the District Court's view that the statutory damages sought were less than the non-statutory damages, the Court does not disturb the District Court's view that the statutory damages are incidental and all other damages are non-incidental. I disagree with both propositions and air the matter since it might affect the District Court's ultimate determination of whether the monetary claims predominate.

As to the statutory damages, I note preliminarily that it is by

-4-

no means settled that a claim for statutory damages is per se incidental. Apparently no court has explicitly indicated that statutory damages are "incidental" for purposes of (b)(2) analysis. In Allison, the Fifth Circuit suggested (by citation to a case involving a claim for statutory damages) that such damages would qualify as incidental, see 151 F.3d at 415 (citing Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D. Cal. 1994)), but Allison did not involve any such claim. Although some district courts have certified (b)(2) classes whose claims included statutory damages, see, e.g., Borcherding-Dittloff v. Transworld Systems, Inc., 185 F.R.D. 558, 565-66 (W.D. Wis. 1999); Colorado Cross-Disability Coalition v. Taco Bell Corp., 184 F.R.D. 354, 361-62 (D. Colo. 1999); Gammon v. GC Services Limited Partnership, 162 F.R.D. 313, 320-22 (N.D. Ill. 1995); Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 450-53 (N.D. Cal. 1994), these courts have not described such damages as "incidental," and have considered a variety of factors in reaching the conclusion that statutory damages did not predominate.[1]

---

[1]One factor considered by some courts approving (b)(2) classes in which statutory damages were sought is the amount of damages to which each class member would be entitled. As one might expect, district courts have appeared more willing to hold that injunctive or declaratory relief predominates where the damages to be received by each individual class member would be minimal. See Borcherding-Dittloff, 185 F.R.D. at 566 ("[T]he potential statutory damages each plaintiff could recover under the act are nominal. If the class has over 50,000 members, each would be entitled to less than ten dollars."); Colorado Cross-Disability Coalition, 184 F.R.D. at 361 (finding that injunctive relief predominated in part because "each class member seeks only $50"); Gammon, 162 F.R.D. at 321 (finding that

In the pending case, Judge Glasser, although undervaluing the statutory damages claim, seems to have accepted the plaintiffs' premise that a claim for statutory damages is "incidental" for (b)(2) purposes because it can be adjudicated without consideration of individual variations among the class members. In this case, the statute provides for actual damages with a minimum recovery of the greater of $1,000 per claimant or $100 for each day of violation. 47 U.S.C. § 551(f)(2)(A) (2000). Although the minimum statutory damages of $1,000 can be determined without considering variations among class members, the alternative minimum of $100 per day of violation will vary somewhat among class members, and any actual damages suffered by each class member will involve considerable variations. The plaintiffs purporting to represent the class seek to avoid such variations by limiting the recovery for each class member to the $1,000 lump sum. I doubt if they can so easily sacrifice the absent class members' claims for minimum daily damages or actual damages, at least without notice and some opportunity for those class members either to agree to accept only the $1,000 payment (or some specified lesser sum, see Part 2, infra) or to opt out of the class. Cf. Arnold, 158 F.R.D. at 464-65 (on motion for reconsideration after certifying (b)(2) class including a claim for statutory damages, ordering that absent class members receive notice

---

individual recovery of damages would be de minimis because "the requested maximum statutory damages, if awarded, would amount to approximately 13 cents per class member.").

and an opportunity to opt out).

As to the non-statutory damages, the District Court understood a major component of the claim to be disgorgement of the profits that the Defendant is alleged to have made by selling information in violation of the class members' statutorily-protected privacy rights. See Parker v. Time Warner Entertainment Co., L.P., 198 F.R.D. 374, 376, 381 (E.D.N.Y. 2001).[2]  If, as seems likely, the Defendant sold this information at a fixed amount per subscriber, it would seem that a claim to disgorge the resulting profit and distribute it pro rata to the class members would not involve any individual variations of the sort that would render these damages "non-incidental."  Of course, all of these considerations concerning damages will not matter if the District Court, on remand, renews its decision to certify a (b)(2) class only for the claims for injunctive and declaratory relief or declines to certify any (b)(2) class.

2. (b)(3) Issues

By seeking to collect statutory damages of $1,000 for each of up to 12 million cable subscribers, this lawsuit could potentially impose on Defendant Time Warner liability for $12 billion.  Even for one of

---

[2]It is not clear whether the District Court regarded disgorgement of profits to be within the scope of the actual damages to which the class might be entitled under the statute or to be the remedy for a state law claim.  At this point, our Court need not make any ruling on the former theory, which has not been developed on appeal.  As to the second theory, the District Court declined to exercise supplemental jurisdiction, although that interlocutory ruling could be reconsidered now that the class certification issue is being remanded.

the world's largest corporations, that is a lot of money.[3] A claim of this sort creates a tension between the statutory provisions for minimum damages and the Rule 23 provisions for class actions that probably was not within the contemplation of those who promulgated either the statute or the rule. At first glance, the tension appears to admit of only two possibilities: (1) the class certification motion is granted, and, if the allegations are proven, Time Warner becomes liable for damages of up to $12 billion, or (2) the class certification motion is denied, and each victim of Time Warner's alleged violations remains free to pursue an individual claim for $1,000 (or the alternative daily minimum recovery or actual damages). Both options are unsatisfactory.

The first option might well encounter due process objections, somewhat analogous to those that the Supreme Court recently identified in setting constitutional limits on punitive damages. See, e.g., State Farm Mutual Automobile Insurance Co. v. Campbell, 123 S. Ct. 1513, 1520-21, 1526 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-35 (2001); BMW of North America,

---

[3]As Senator Everett Dirksen famously said in the context of the federal budget, "A billion here and a billion there, and pretty soon you're talking about real money." The New International Dictionary of Quotations 184 (Hugh Rawson & Margaret Miner eds., 1986) (quoting Senator Everett Dirksen).

Inc. v. Gore, 517 U.S. 559, 585-86 (1996).  Although statutory damages amounts might be calculated in part to compensate for actual losses that are difficult to quantify, they are often also motivated in part by a pseudo-punitive intention to "address and deter overall public harm." Texas v. American Blastfax, Inc., 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000) (upholding constitutionality of statutory damages provision of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (2000)); see also Saint Louis, Iron Mountain & Southern Ry. Co. v. Williams, 251 U.S. 63, 66 (1919) (in setting a statutory penalty, the state may "adjust its amount to the public wrong rather than the private injury."); cf. State Farm, 123 S. Ct. at 1520-21, 1526 ("punitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution.").  A statutory penalty may violate due process where the penalty prescribed is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Williams, 251 U.S. at 66-67. Even if a massive aggregation of minimum statutory damages survives constitutional scrutiny, there is a substantial question whether the Congress that authorized payments of $1,000 for victimized cable subscribers expected 12 million of them each to receive such an amount for a somewhat technical violation.

The second option remits each victim to a separate lawsuit, needlessly clogging the courts with repetitious suits if many are filed, or rewarding some law violators with liability for only a slight

-9-

amount of total damages if, as seems more likely, few suits are filed.[4] Cf. Henry v. Cash Today, Inc., 199 F.R.D. 566, 573 (S.D. Tex. 2000) (certifying class for claims under Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. (2000), and finding that $1,000 minimum statutory award under TILA was insufficient to motivate individuals to bring meritorious claims).

I think a third alternative is warranted in order to achieve to a considerable extent the objectives of both the statute and the class action rule. The statute could be construed to authorize an award of substantially less than $1,000 to all but the initially named plaintiffs who instituted the class action. I recognize that this approach cannot be reconciled with the terms of the statute, and for some that would be an insuperable obstacle. But in my view and that

---

[4]The idea of rejecting class action certification because of the large size of an aggregation of statutory damages awards drew major support, if not its origin, from the opinion of Judge Frankel in Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. 1972). In that case, Judge Frankel denied a motion for (b)(3) class certification for a class consisting of 130,000 credit card holders claiming the $100 statutory damages authorized by the Truth in Lending Act of 1968, 15 U.S.C. §§ 1601 et seq. He found "cogent and persuasive" the defendant's argument that "the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment . . . ." Ratner, 54 F.R.D. at 416. Although Ratner has been cited favorably by many courts, see, e.g., Kline v. Coldwell, Banker & Co., 508 F.2d 226, 234-35 (9th Cir. 1974); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 341-47 (10th Cir. 1973); In re Trans Union Corp. Privacy Litigation, 211 F.R.D. 328, 348-51 (N.D. Ill. 2002); Berkman v. Sinclair Oil Corp., 59 F.R.D. 602, 608-09 (N.D. Ill. 1973), I believe this is one of those rare instances where a judicial Homer nodded, see Horace, Ars Poetica 402 ("Homer himself hath been observ'd to nod."), quoted in Bartlett's Familiar Quotations (13th ed. 1951).

-10-

of many others, statutes are not to be applied according to their literal terms when doing so achieves a result manifestly not intended by the legislature.  See, e.g., Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982) ("[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling."); Church of the Holy Trinity v. United States, 143 U.S. 457, 459 (1892) ("It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers."); Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 297 (2d Cir. 1998) ("The plain meaning of a statute may not be controlling in those rare cases where literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (quotation marks omitted). I do not believe that in specifying a $1,000 minimum payment for Cable Act violations, Congress intended to expose a cable television provider to liability for billions of dollars.  Nor do I believe that Congress intended to permit a violator to avoid payment of at least some compensation to numerous victims of its violations simply because its actions affected a large number of subscribers. Perhaps, as the Court's opinion seems to imply, the Due Process Clause creates a constitutional limit upon an aggregation of statutory damages.  But I hesitate to rely on a novel theory of constitutional law when a sensible interpretation of a statute, construed against a

-11-

background of possible constitutional concerns, is available.[5] See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S. 568, 575, (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

Even if possible due process concerns or statutory construction to avoid a bizarre result not intended by Congress might not independently require limiting an aggregate statutory damages award, such considerations would seem appropriate to inform the customarily broad discretion of a district judge in the context of class certification. Judges have used their discretion to determine the appropriate scope of a class, see, e.g., American Timber & Trading Co. v. First National Bank, 690 F.2d 781, 787 (9th Cir. 1982) (affirming judicial creation of a subclass as being "within the district court's broad power under Fed. R. Civ. P. 23(d) to adopt procedural innovations to facilitate management of the class action."); Shapiro v. Midwest

---

[5]Of course, Congress would always have the option to respond to the setting of a limit on aggregate damage awards by explicitly precluding such a limit or establishing a lower or even higher limit of its own. See Disabled in Action of Metropolitan New York v. Hammons, 202 F.3d 110, 120 (2d Cir. 2000) ("We thus seek to apply the statutory framework as best we can, recognizing always that Congress has the final word and may wish to revisit the statutory scheme."); cf. 15 U.S.C. § 1640(a)(2)(B) (amendment that caps class action TILA awards at the lesser of $500,000 or 1 percent of the creditor's net worth).

Rubber Reclaiming Co., 626 F.2d 63, 71 (8th Cir. 1980) (holding that the broad discretion enjoyed by district courts in the class action context "extends to defining the scope of the class," and affirming district court's limitation of plaintiff's proposed class), and, pursuant to Rule 23(c)(4), to certify a class as to particular issues, see, e.g., Williams v. Owens-Illinois, Inc., 665 F.2d 918 (9th Cir. 1982) ("It is within the discretion of the trial judge, under Rule 23(c)(4), to limit the issues in a class action to those parts of a lawsuit which lend themselves to convenient use of the class action motif.") (quotation marks omitted); Simon v. Philip Morris Inc., 200 F.R.D. 21, 28-33 (E.D.N.Y. 2001) (discussing power of district court to grant partial certification or to bifurcate issues and collecting cases). I think that potential due process concerns and avoiding a result not intended by Congress can appropriately be considered by a district judge in determining that a class will be certified only up to some reasonable aggregate amount of damages. When considering statutory damages provisions authorizing sums of "not more than" stated maximums, the Ninth Circuit has not hesitated to rule that a large aggregate award in a class action exceeded a district court's discretion and should be substantially reduced. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1309-11 (9th Cir. 1990).[6] Determining what portion of the full amount of statutory

---

[6]Six (6) Mexican Workers concerned the statutory damages provision of the Farm Labor Contractor Registration Act, 7 U.S.C. § 2050a(b)

-13-

damages will be available to a class seems not significantly different than determining what issues will be available for classwide adjudication. A district judge ought to be able to exercise informed discretion to certify a class entitled to receive no more than some specified aggregate amount.[7]

It would probably make sense to permit the named plaintiffs to recover the full $1,000 amounts specified in the statute (if they prevail on the merits) and allocate the balance of the limited aggregate amount among the other members of the class. Awarding absent class members less than the full statutory amounts is not unfair to them since it is highly unlikely that they would have brought any litigation in their own names. Moreover, the (b)(3) opt-out opportunity will afford them a chance to sue for the full $1,000 if they choose to do so.

A district court considering whether to adjust the tension between a substantial aggregation of statutory damages and the virtues of a class action by limiting the size of the awards (to all but the named plaintiffs) should make its damages ruling in the context of deciding

_____

(1988) (repealed), now codified at 29 U.S.C. § 1854(c)(1) (2000).

[7]Procedurally, a judge might accomplish this by modifying the proposed class in the certification order. Another option would be for the judge to inform the plaintiffs, before deciding on the motion for certification but after having received argument on the subject from all parties, of the aggregate statutory amount above which (b)(3) superiority concerns would arise, and to permit the plaintiffs to amend their motion for class certification to seek reduced aggregate damages before a certification decision is rendered.

-14-

the class certification issue, after making at least a preliminary decision as to the size of the class being considered for certification.  Otherwise, the in terrorem threat of a massive award of the full statutory amounts will unfairly induce a large settlement once a class has been certified.  See In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1297-98 (7th Cir. 1995) (discussing settlement pressures imposed in class action context).  It would be appropriate for a district court to explore with the parties at an early stage not only the traditional issue of the size of the class but also the novel issue of an appropriate ceiling on aggregate statutory damages for class members.

It might seem that my approach suffers from the same defect as permitting the size of the potential recovery to deny a class action altogether: the wrongdoer benefits because of the scope of its wrongdoing.  However, if no (b)(3) class is certified, the wrongdoer escapes liability to all except the named plaintiffs, whereas under my approach, the wrongdoer is obliged to provide at least some compensation to all class members, and the anticipation of that result should exert the deterrent effect that Congress intended.  I urge a limitation on the aggregate amount of damages either through a sensible construction of the statute or a sensible exercise of a district judge's Rule 23 discretion, rather than restricting district courts to the unattractive choice of either evolving a constitutional limitation on the aggregate recovery or else rejecting (b)(3) class certification

-15-

entirely, thereby insulating a defendant from liability for some appropriate amount of damages.

                              * * * * *

In light of these considerations, I concur in the decision to remand the class certification issues and agree with most of Judge Underhill's opinion.