Eurlene **ROBINSON**; Rashad L. Atkinson; Carla Droughn; David Fitzpatrick; Kirestin J. Harris; Janice L. Medley; Willie L. Toombs, Jr.; Kahlil Watkins; and Tamera L. Williams, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

**SEARS, ROEBUCK AND CO., Defendant.**

**No. 4:98CV00739 SWW.**

United States District Court,
E.D. Arkansas,
Western Division.

July 3, 2000.

Daniel R. Carter, Holly E. Isaac, James & Carter, Little Rock, AR, for plaintiff.

John M. Dickman, Peggy A. Davis, Winston & Strawn, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, Chief Judge.

This is a case of alleged employment discrimination and is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, and the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark.Code Ann. §§ 16–123–101 *et seq.* The nine named plaintiffs in this matter, eight of whom are African–American and one who is Asian–American, are current and former employees of the store operated by defendant, Sears, Roebuck and Company ("Sears"), at 600 South University in Little Rock, Arkansas ("University Store"). Plaintiffs allege disparate treatment and disparate impact based on race. The following motions are before the Court: (1) motion of Sears for summary judgment with respect to plaintiffs' individual claims of discrimination [doc. # 134]; and (2) motion of plaintiffs for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure [doc. # 115]. Having carefully considered the matter, the Court

denies Sears' motion for summary judgment and grants plaintiffs' motion for class certification as herein modified.

## I. *Background*

The plaintiffs bringing this lawsuit are as follows: (1) Eurlene Robinson, an African–American female formerly employed at Sears' University Store; (2) Rashad L. Atkinson, an African–American Male currently employed at Sears' University Store; (3) Carla Droughn, an African–American female currently employed at Sears' University Store; (4) David Fitzpatrick, an Asian–American male formerly employed at Sears' University Store; (5) Kirestin J. Harris, an African–American female currently employed at Sears' University Store; (6) Janice L. Medley, an African–American female currently employed at Sears' University Store; (7) Willie L. Toombs, Jr., an African–American male formerly employed at Sears' University Store; (8) Kahlil Watkins, an African–American male formerly employed at Sears' University Store; and (9) Tamera L. Williams, an African–American female currently employed at Sears' University Store. *See* Pl.s' Mot. for Class Cert. (Ex. 2–10). All of the plaintiffs worked as hourly, non-commissioned sales associates in the Men's Department at Sears' University Store. *Id.*

This lawsuit stems from a decision by Sears to implement a store wide increase in starting pay in August 1998. Def.s' St. of Mat. Facts at ¶ 15; Pl.s' St. of Undisp. Facts at ¶ 12. In 1995, the designated starting hourly rate of pay for newly hired non-commissioned sales associates was $5.00 per hour. Def.s' St. of Mat. Facts at ¶ 15. In March 1996, the designated starting hourly rate was increased to 5.50 per hour. *Id.* Effective August 2, 1998, the designated starting hourly rate of pay was increased to $6.25 per hour. *Id.* According to Sears, newly hired noncommissioned sales associates are "generally" paid the designated starting hourly rate of pay. *Id.*

Plaintiffs state that prior to the effective date of the store wide increase, they learned that certain of their White counterparts were making a higher hourly rate. Compl. at ¶ 32. Upon discovering this apparent disparity in pay, each plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), with plaintiffs Robinson, Atkinson, Droughn, Harris, Medley, Toombs, Watkins, and Williams essentially claiming in their respective EEOC charges that they are being paid less than their White counterparts because of their race, Black, *see* Compl. (Ex. 1–3, 5–9), while plaintiff Fitzpatrick likewise claimed in his EEOC charge that he is being paid less than White employees because of his race, Asian. *Id.* (Ex. 4).

Following receipt of their right to sue letters from the EEOC, plaintiffs filed this lawsuit on November 4, 1998, on behalf of themselves and all other persons similarly situated. Plaintiffs essentially claim that they and the putative class received less pay than their White counterparts at the Sears University Store because of Sears' subjective and discriminatory decision making process with respect to placement, transfer, and promotion. Compl. at ¶¶ 44, 49. Plaintiffs seek "a declaratory judgment as to plaintiffs' rights and for a permanent injunction, restraining defendant from maintaining a policy, practice, custom or usage of discriminating against plaintiffs and other persons based upon their race with respect to compensation, terms, promotions, privileges, and conditions of employment and in ways that deprive plaintiffs and other persons in the class of equal employment opportunities and otherwise adversely affect their status as employees because of race." *Id.* at ¶ 10. Plaintiffs also seek "restitution to plaintiffs and the class they represent of all rights, privileges, benefits, and income that would have been and should be received by them but for defendant's unlawful and discriminatory practices." *Id.*

Following extensive discovery and several delays occasioned by the discovery process, plaintiffs, on May 1, 2000, filed

their motion for class certification.[1] Plaintiffs seek to certify a class of 932 current and former minority employees of Sears' University Store who allegedly "have been discriminated against by Sears' employment practices in hiring/initial job assignment and placement, pay and promotion." Mot. for Class Cert. at ¶1; Pl.s' Br. in Supp. of Mot. for Class Cert. at 2. Plaintiffs state that certification is necessary to address the problem of racial discrimination which permeates each department of the Sears University Store. Pl.s' Br. in Supp. of Mot. for Class Cert. at 1. They state that Sears treats minorities differently in every aspect of employment which affects pay, and that each named plaintiff complained about the pay they received *vis a vis* their White counterparts. *Id.* Plaintiffs state that their pay, like that of the putative class, is affected by hiring, placement, and promotion decisions made by the core White management group at the University Store. *Id.;* Mot. for Class Cert. at ¶3. They state that minority employees' pay is adversely affected by management's decisions regarding placement, initial salary, advancement, and promotion, and that like the named plaintiffs, minority employees are assigned to low pay departments, disproportionately assigned to and kept in part-time jobs, and denied the opportunity to advance to full-time status, jobs with higher earning potential, such as the Big Ticket Departments and Brand Central, and denied management positions. Mot. for Class Cert. at ¶4; Pl.s' Br. in Supp. of Mot. for Class Cert. at 1. Plaintiffs state that minorities are not assigned to the predominantly White commissioned sales positions at Sears which pay more than the positions to which minorities are typically assigned, and that once minorities are in their initial low pay part-time jobs, they are as a class passed over for promotion to full-time positions in favor of non-minority persons. Pl.s' Br. in Supp. of Mot. for Class Cert. at 1. They state that minorities are denied or are not given transfers to higher paying departments, and that as a class, they are paid less than their White counterparts. *Id.* at 1–2.

Plaintiffs state that evidentiary support which meets the requirements of Fed. R.Civ.P. 23 is found in the June 13, 2000 statistical analysis of Martin Shapiro, Ph. D., a labor audit performed by the United States Department of Labor ("DOL"), and twenty affidavits of current and former Sears employees. *Id.* at 2; Pl.s' Reply Br. Re. Class Cert. at 11–12. They state that a common theme runs throughout this evidence, that theme being that minorities are discriminated against with respect to their initial job assignments and placement, pay, and promotions. Pl.s' Br. in Supp. of Mot. for Class Cert. at 2. Plaintiffs state that the DOL found that minorities were under-utilized in higher pay departments and over-utilized in lower pay departments, and that Dr. Shapiro's analysis makes similar, more detailed findings, which show the reason for the discrepancy in pay, finding that minorities are discriminated against in all aspects of initial assignment and subsequent movement. Pl.s' Reply Br. Re. Class Cert. at 11–12.[2] In

1. On January 6, 1999, after having granted Sears an extension of until and including December 30, 1999, in which to respond to the complaint, this Court issued its first scheduling order establishing a trial date of November 1, 1999, and a deadline of September 17, 1999, for the completion of discovery and the filing of motions. Discovery in this case proved to be difficult and contentious, and resulted in the filing of over 25 motions and the issuance of some 30 Orders by this Court. In addition, this Court has conducted numerous phone conferences to address discovery issues. These discovery disputes have resulted in several delays and has resulted in the scheduled trial date being pushed back on more than one occasion, with the latest trial date being set for September 11, 2000. *See* Amended Scheduling Order dated March 15, 2000 [doc. # 96].

2. Sears has filed a motion to strike Dr. Shapiro's June 13, 2000 report on grounds that it is untimely and contains new opinions, and would thus prejudice Sears were it to be considered. This motion will be addressed in a separate Order as plaintiffs filed their response to Sears' motion on June 30, 2000, after the substance of today's Memorandum

this respect, plaintiffs assert that the report prepared by Sears' expert, Dr. Finis Welch, shows a statistically significant standard deviation of 6.69 and 6.24 respectively for differences in pay between non-White and White employees' pay for all sales associates, and a statistically significant disparity of 7.83 and 7.29 respectively for the time periods analyzed for all Sears' University Store employees. *Id.* at 12 (citing Def.'s Ex. 1).[3] They go on to state that the evidence submitted via the affidavits of current and former employees, who worked or are working at Sears in fourteen different departments, are real life experiences of the common practice of discrimination throughout the entire University Store. Br. in Supp. of Mot. for Class Cert. at 2.

Plaintiffs state that the putative class consisting of 932 current and former minority employees of which certification is sought is made up of persons who have been discriminated against by Sears' employment practices in hiring/initial job assignment and placement, pay, and promotion, and that these persons' claims against Sears are typical of those of the named plaintiffs. *Id.* Plaintiffs state that common questions of law and fact are present on issues for the named plaintiffs, as well as the putative class. *Id.* They state that for all these reasons, class certification is necessary and will allow the Court, if liability is proven, to remedy the racial injustice and discrimination found at the University Store. *Id.*

Sears denies that it discriminated against plaintiffs, stating that "due to a delay in obtaining approval for a new wage rate, many incumbent employees, White and Minority, including some Plaintiffs, were paid less than newly-hired non-commissioned sales associates, White and Minority, during the Summer of 1998." Def.'s Mem. of Law in Opp. to Pl.s' Mot. for Class Cert. at 2. Sears states that following approval of the new rate, it was implemented for all non-commissioned sales associates effective August 2, 1998. *Id.* Sears further asserts that plaintiffs have no standing under Article III of the Constitution to assert across-the-board claims for themselves or the putative class, and that plaintiffs' Title VII across-the-board claims are also beyond the scope of their charges filed with the EEOC. *Id.* Finally, Sears asserts that plaintiffs have failed to meet the requirements of Rule 23(a) and (b)(2). *Id.*

In addition to filing a response in opposition to plaintiffs' motion for class certification, Sears, on June 2, 2000, filed a motion for summary judgment with respect to plaintiffs' individual claims of discrimination. Sears asserts that in early 1998, the management at Sears' University Store determined that its starting pay rate of $5.50 per hour was not competitive with the rates being paid by area businesses against which it competes for employees and decided that its wage rate should be increased. Def.'s Mem. of Law in Supp. of Mot. for Summ.J. at 1. Sears states that

and Order had been prepared and finalized for filing. The Court will note at this time, however, that it is aware of the history surrounding Dr. Shapiro's reasons for submitting an amended report. Based on that history, the Court is inclined to deny Sears' motion to strike, although it will consider the matter further. In the meantime, the Court will utilize Dr. Shapiro's June 13th report in analyzing the issues in today's Memorandum and Order.

**3.** Dr. Welch stated that "[t]he initial comparisons show that average pay rates for non-whites are below pay rates for whites by over 26% if job code and full-time status are not

taken into account." Def.'s Ex. 1. He states, however, that these differences, which he acknowledges are "statistically significant," reflect for the most part "the difference in pay rates between commissioned jobs and hourly sales jobs." *Id.* Of course, plaintiffs claim in this lawsuit that minorities are not assigned to the predominantly White commissioned sales positions at Sears which pay more than the positions to which minorities are typically assigned, and that once minorities are in their initial low pay part-time jobs, they are as a class passed over for promotion to full-time positions in favor of non-minority persons, Pl.s' Br. in Supp. of Mot. for Class Cert. at 1.

before adjusting the wages of its incumbent employees, however, it started paying newly hired sales associates a wage rate that exceed the wage rates of many incumbent employees. *Id.* Sears states that in retrospect, this was probably not a wise decision because many incumbent employees, including plaintiffs, learned that new employees were being paid more than they were and, seeing that the new hires in their department were White, concluded that the disparity in pay was race related. *Id.* at 1–2. Nevertheless, Sears states that a full presentation of the facts makes clear that race was not a factor as White and non-White employees were impacted equally by the University Store's decisions. *Id.* at 2. Sears goes on to state that while the University Store's compensation practices have not been perfect, they have not been racially discriminatory and the facts do not support a reasonable inference of race discrimination. *Id.*

Plaintiffs, however, state that they are alleging that because they are minorities, they were steered into lower paying jobs, actually paid less than White employees doing the same work, and not given opportunities to advance in a manner proportional to similarly situated White employees. Pls' Br. in Supp. of Resp. to Def.'s Mot. for Summ.J. at 1–2. Plaintiffs note that although they have alleged both disparate treatment and impact under Title VII, § 1981, and ACRA, Sears' motion addresses only their claims for disparate treatment in hourly rates of pay received, and does not address discrimination in pay as it relates to benefits, placement, promotion, transfer, and segregation in the workplace, or the impact the placement of plaintiffs into part-time, lower paying, hourly jobs has on their pay. *Id.* at 2. As for their claims of disparate treatment in hourly rates of pay received, plaintiffs state that they have established a prima facie case of race discrimination with respect to pay, based on both statistical and non-statistical evidence, and that Sears has failed to state credible, logical, legitimate nondiscriminatory reasons for disparate

treatment in hourly rates of pay received. *Id.* at 6–17. Plaintiffs go on to assert that there exist genuine issues of fact with respect to both plaintiff Harris' failure to promote claim and plaintiff Watkins' discrimination in pay claim. *Id.* at 17–20.

It is plaintiffs' motion for class certification and Sears' motion for summary judgment to which the Court now turns, beginning first with Sears' motion for summary judgment since resolution of that motion affects issues of class certification.

## II. *Discussion*

### 1. *Sears' Motion for Summary Judgment*

Sears moves for summary judgment with respect to plaintiffs' individual claims of discrimination on the following grounds: (1) plaintiffs cannot establish a prima facie case of unequal pay based on race; (2) Sears has articulated nondiscriminatory reasons for the differences in pay; (3) plaintiff Harris' claim regarding her denial of a full-time position is without merit; and (4) plaintiff Watkins' claim regarding his failure to receive a pay increase likewise is without merit. Sears argues that there are no genuine issues of material fact with respect to any of these issues and that it is entitled to summary judgment on plaintiffs' individual claims of discrimination as a matter of law.

### A. *Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment,

the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348 (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* (citation omitted).[4]

### B. *Discussion*

■ This Court analyzes plaintiffs' circumstantial evidence of race discrimination with respect to their Title VII, § 1981, and ACRA claims under the *McDonnell Douglas* frame work. *See Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 863 (8th Cir. 1997); *Roark v. City of Hazen, Arkansas,* 189 F.3d 758, 761 (8th Cir.1999). *See also Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996) (Title VII analysis applicable to § 1981 claims); *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n. 3 (8th Cir.2000) (noting that claims premised under ACRA "are analyzed in the same manner as Title VII claims");

*Flentje v. First National Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531, 536–38 (2000) (applying federal Title VII analysis and cases to ACRA claim).[5] In order to establish a prima facie case of race discrimination with respect to the matters raised in Sears' motion for summary judgment, plaintiffs must establish (1) they are members of a protected class; (2) they were qualified for equal pay or, in the case of plaintiff Harris, a full-time position; and (3) their failure to receive equal pay or a full-time position was under circumstances giving rise to an inference of discrimination. *Chock,* 113 F.3d at 863. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for plaintiffs' failure to receive equal pay or a full-time position. *Roark,* 189 F.3d at 761. If the employer satisfies its burden of production, the employees must show that the proffered reason is pretextual. *Id.* At all times the ultimate burden of persuasion remains with the employees. *Id. See also Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

### i. *Prima facie case*

Sears argues that plaintiffs cannot establish a prima facie case of race discrimination with respect to pay because White and non-White non-commissioned sales associates were treated identically. Sears further argues that many non-White non-commissioned sales associates, including

---

4. In applying this standard of review, the Court is also cognizant of the Eighth Circuit's recent opinion "emphasiz[ing] the oft repeated phrase that summary judgment should seldom be granted in discrimination cases." *See Bassett v. City of Minneapolis,* 211 F.3d 1097, 1099 (8th Cir.2000) (citing 10 Eighth Circuit cases).

5. Plaintiffs acknowledge that Arkansas courts have applied Title VII analysis and law to ACRA claims, but nevertheless argue that such analysis and law is not binding on this

Court and that "[a] separate analysis applies under the Arkansas Civil Rights Act." Pl.s' Br. in Supp. of Resp. to Def.'s Mot. for Summ.J. at 2 n. 5. Plaintiffs do not suggest a different analysis that should be applied, however, and, indeed, themselves base their response to Sears' motion for summary judgment on the *McDonnell Douglas* framework applicable to Title VII cases. *Id.* at 5–6. Accordingly, this Court will consider plaintiffs' ACRA claims utilizing Title VII analysis and law.

some of the plaintiffs, had higher rates of pay than many White non-commissioned sales associates. ' That being the case, argues Sears, no reasonable inference can be drawn that plaintiffs were paid less than their White counterparts because of race.

The Court finds that plaintiffs have established the first two elements of a prima facie case of race discrimination with respect to pay as they are members of a protected class (non-White employees) and Sears does not contest for purposes of this motion that plaintiffs performed work substantially equal to that of the White non-commissioned sales associates identified as having been compensated at higher rates. *See* Def.'s Mem. of Law in Supp. of its Mot. for Summ.J. at 7 n. 4.

■ The Court additionally finds that plaintiffs have alleged sufficient facts to show that the disparity in pay occurred under circumstances giving rise to an inference of discrimination on the basis of race, thus satisfying the third element of a prima facie case. Plaintiffs point to evidence showing that there is a statistically significant difference between the mean earnings of White employees and the mean earnings of minority employees for the workforce as a whole at the University Store, including for hourly employees and sales associates, *see* Pl.s' Ex. 1 (Dr. Shapiro's June 13, 2000 statistical analysis), and plaintiffs identify a number of White employees as having received rates higher than themselves. *See* Pl.s' St. of Undisp. Facts at ¶¶ 20–29.[6] For example, the highest paid plaintiff in May 1998, plaintiff Atkinson, was earning $6.18 per hour after having been employed at Sears for two years, when Sears hired another White employee at $6.75 per hour. *See* Def.'s St. of Mat. Facts at ¶¶ 56, 175. Indeed, between January 1, 1998, and July 15, 1998, Sears hired five employees into the Men's Department at the University Store, four of whom were White and one who was

African–American. The one minority was paid at the existing start rate of $5.50 per hour, while the four White employees were paid in excess of the start rate—between $6.00 and $6.75 per hour. *See* Pl.s' St. of Undisp. Facts at ¶ 42 (citing Pl.s' Ex. 24 (Sear's HR Decision Reports at 4361)).

Sears may be correct that certain non-White non-commissioned sales associates, including some of the plaintiffs, had higher rates of pay than other White non-commissioned sales associates, but merely because certain members of a protected class had higher rates of pay than other non-protected employees does not demonstrate an absence of discrimination. *Bell v. Bolger*, 708 F.2d 1312, 1318 (8th Cir.1983). In any case, the threshold of proof necessary to establish a prima facie case of discrimination is minimal, *see Allen v. Interior Constr. Services, Ltd*, 214 F.3d 978, 983 (8th Cir.2000) (citation omitted), and this Court concludes that plaintiffs have presented sufficient evidence to meet this threshold.

### ii. *Nondiscriminatory Reason and Pretext*

Sears argues that even if plaintiffs are able to establish a prima facie case of race discrimination with respect to pay, it has articulated nondiscriminatory reasons for its decisions. Specifically, Sears asserts that it determined that its starting rate of $5.50 per hour was not competitive with the employers against which it competes for employees and that it accordingly started paying newly hired non-commissioned sales associates in the Spring and Summer of 1998 more than that rate in anticipation of the start rate being increased. Sears argues that this practice affected White and non-White employees equally and resulted in many newly hired White and non-White associates receiving a higher rate than many incumbent associates.

---

**6.** In the interests of privacy, this Court will not reveal in this Memorandum and Order

the identity of any such employees.

■ To establish a fact issue on pretext, a plaintiff must present evidence that: (1) creates a factual dispute as to whether the employer's proffered reasons for the challenged employment action are pretextual; and (2) allows a reasonable jury to infer that the employer's action was motivated by a discriminatory animus. *Allen,* 214 F.3d 978, 983 (citations omitted). The Court finds that plaintiffs have presented such evidence.

■ Plaintiffs point out that Sears' use of subjective criteria, such as "experience," in establishing pay rates has apparently resulted in White employees being paid more for experience than was paid to then-existing non-White employees. *See* Pl.s' Br. in Supp. of Resp. to Def.'s Mot. for Summ.J. at 13–16; Pl.s' Ex. 3 (Murphy Depo. at 24). The Court notes that subjective employment procedures are to be closely scrutinized in disparate treatment cases because of their susceptibility to discriminatory abuse and, coupled with statistical evidence of a pattern of a discrimination, may be evidence of pretext. *Bell,* 708 F.2d at 1319–20. In this respect, Sears has acknowledged that the employment decisions of department managers and human resources with respect to hiring, pay and promotions "contain elements of subjectivity," *see* Def.'s Mem. of Law in Opp. to Pl.s' Mot. for Class Cert. at 14, and Dr. Shapiro's June 13, 2000 statistical analysis found that disparity between White and minority employee pay is attributable to differential job assignments unrelated to knowledge, skill, ability or interests. *See* Pl.s' Ex. 1. Indeed, Sears' own expert, Dr. Welch, found a "statistically significant" disparity between the pay rates for non-White employees and White employees. *See* n. 3, *supra* (quoting Def.'s Ex. 1).

Moreover, the Court has previously noted that of the five employees hired into the Men's Department at the University Store between January 1, 1998, and July 15, 1998, the one minority was paid at the existing start rate of $5.50 per hour, while the four White employees were paid in excess of the start rate—between $6.00 and $6.75 per hour. *See* Pl.s' St. of Undisp. Facts at ¶ 42 (citing Pl.s' Ex. 24, Sear's HR Decision Reports at 4361). While this fact certainly does not prove race discrimination, it is " 'the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome.' " *Widoe v. District # 111 Otoe County School,* 147 F.3d 726, 732 (8th Cir. 1998) (quoting *Ryther v. KARE 11,* 108 F.3d 832, 844 (8th Cir.) (en banc), *cert. denied,* 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997)).

Upon consideration of the record in the light most favorable to plaintiffs, this Court finds that a genuine issue of fact exists as to whether Sears' proffered reasons are not the true reasons for Sears' apparent failure to pay plaintiffs at a rate equal to that of their White counterparts.

### iii. *Plaintiff Harris*

■ Sears argues that plaintiff Harris' claim regarding her denial of a full-time position is without merit as the decision was made by the sales manager for the Men's Department, Oneida Phillips, who, like Harris, is African–American. In any case, argues Sears, Harris' request to be promoted to a full-time position in the Men's department was denied because she did not comply with the dress code, she was late often, she had limited flexibility in her schedule, and she had a tendency to stand around and talk with her coworkers. The Court has carefully considered the matter and finds that there remain genuine issues of material fact with respect to the reasons Harris' request to be promoted to a full-time position was denied.

■ The mere fact that Phillips is the same race as Harris is not dispositive of Harris's discrimination claim. The Supreme Court has noted that "in the ... context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own

race. 'Because of the many facets of hu- man motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group.' " *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Castaneda v. Partida,* 430 U.S. 482, 499, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)). *Cf. Curley v. St. John's University,* 19 F.Supp.2d 181, 193 (S.D.N.Y.1998) (noting that "skin tone variation among black workers ... clearly may be a basis for discrimination"). In any case, Harris claims, and certain evidence indicates, that Store Manager Mike Gibby, who is White, must approve of an employee moving from part-time to full-time. *See* Murphy Depo. at 53.

Nor has Sears demonstrated that it is entitled to summary judgment with respect to Harris's claim of discrimination because of any alleged deficiencies in her work habits. Harris claims that she was qualified for the job while Sears argues she was not. The Court agrees with plaintiffs that "[w]hether plaintiff Harris was not promoted ... because she is a poor employee or whether it was because she is Black is a question for the jury." *See* Pl.s' Br. in Supp. of Resp. to Def.'s Mot. for Summ.J. at 18. While Sears may succeed in convincing a jury that plaintiff Harris was in fact unqualified for a full-time position, the Court is unable to resolve this factual dispute on the record as it now stands.

### iv. *Plaintiff Watkins*

Sears argues that plaintiff Watkins' claim regarding his failure to receive a pay increase is without merit as the decision was made by Phillips, who like Watkins is African–American. For the reasons previously stated, the mere fact that Phillips is the same race as Watkins is not dispositive of Watkin's discrimination claim, *see Oncale,* 523 U.S. at 78, 118 S.Ct. 998, and there is evidence in the record that the Store Manager, who is White, must ap-

prove of an employee moving from part-time to full-time. *See* Murphy Depo. at 53.

Sears also argues that it is entitled to summary judgment as Phillips mistakenly thought Watkins was requesting a $10 to 15 increase rather than the actual request of an increase of "$.10 – $.15" (which, Sears argues, also constitutes a nondiscriminatory reason), that Watkins was in any case compensated at a rate more than the raise he requested (thus, Sears argues, Watkins was not damaged by the denial of a pay increase), and that Watkins has not identified a similarly situated White employee who was treated more favorably by Phillips.

These assertions do not entitle Sears to summary judgment. Watkins worked at Sears from July 1997 to March 1998, and at the request of Phillips, he returned to work at Sears in July 1998 at the rate of $6.25 per hour. Pl.s' Ex. 4 (Watkins' Depo. at 18–19). The record shows, however, that a White counterpart was hired in May 1998 at the rate of $6.75 per hour for his less than one year experience. *See* Pl.s' Br. in Supp. of Resp. to Def.'s Mot. for Summ.J. at 20; Def.'s St. of Mat. Facts at ¶ 175. The fact that Watkins may have been compensated at a rate more than the "$.10 – $.15" rate he initially requested does not answer the question of whether his compensation in any case was less than the pay rates of other White employees performing substantially the same work as he because of race. Further plaintiffs dispute any mistake that Phillips may have made regarding Watkins' request for a pay increase. Considering the entire evidence of record, this Court finds that Watkins' claim regarding his failure to receive a pay increase is for the jury.

\* \* \* \* \* \*

For the foregoing reasons, the Court finds that Sears' motion for summary judgment with respect to plaintiffs' individual claims of discrimination should be and hereby is denied. The Court now turns to plaintiffs' motion for class certification.

## 2. *Plaintiffs' Motion for Class Certification*

■ In order to obtain class certification, plaintiffs have the burden of showing that the class should be certified and that the requirements of Fed.R.Civ.P. 23 are met. *Bishop v. Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n,* 686 F.2d 1278, 1288 (8th Cir.1982). Rule 23(a) permits class certification where

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A district court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *See also In re Milk Products Antitrust Litigation,* 195 F.3d 430, 436 (8th Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000). In this regard, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364. However, "nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178, 94 S.Ct. 2140 (citation omitted). "A

district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion." *In re Milk Products Antitrust Litigation,* 195 F.3d at 436 (quoting *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984)).

In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The plaintiffs in this case seek certification under Rule 23(b)(2), which permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Thus, certification pursuant to Rule 23(b)(2) "is appropriate when plaintiffs seek injunctive relief from acts of an employer 'on (the) grounds generally applicable to the class.' " *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 563 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983) (quoting *United States Fidelity & Guar. Co. v. Lord,* 585 F.2d 860, 875 (8th Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1228, 59 L.Ed.2d 462 (1979)). *See also DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir.1995), *cert. denied sub nom., Michael Thomas Crehan v. Gretchen DeBoer,* 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996). Racial discrimination is such a ground and cases seeking injunctive relief against class-wide race discrimination are appropriately brought under Rule 23(b)(2). *Paxton,* 688 F.2d at 563.

### A. *Article III Standing*

The Court first addresses Sears' argument that plaintiffs failed to establish they have Article III standing to assert across-the-board discrimination claims. Sears ar-

gues that plaintiffs have failed to demonstrate that they have suffered the same injury as the putative class, and that they therefore do not satisfy constitutional standing requirements to assert those claims.

■ Certainly, the Court would agree that a named plaintiff complaining of a particular employment practice cannot assert claims on behalf of the putative class concerning other employment practices as to which he or she has not been personally injured. *See, e.g., Roby v. St. Louis Southwestern Railway Co.,* 775 F.2d 959 (8th Cir.1985) (class representatives must possess same interest and suffer same injury as their fellow class members; black railroad employees not affected by railroad's promotion policies were not proper class representatives for employees affected by those policies). Here, however, plaintiffs allege in their lawsuit that Sears maintains "a policy, practice, custom or usage of discriminating against plaintiffs and other persons based upon their race with respect to compensation, terms, promotions, privileges, and conditions of employment and in ways that deprive plaintiffs and other persons in the class of equal employment opportunities and otherwise adversely affect their status as employees because of race." Compl. at ¶ 10. *See also* Compl. at ¶ 44 (noting that common questions of law and fact include whether Sears denies promotions and pay raises to non-White employees while allowing the same promotions and pay raises to White employees). Plaintiffs have submitted affidavits detailing discriminatory acts clearly within the purview of these allegations. *See* Pls.' Mot. for Class Cert. (Ex. 2–10).

Nevertheless, Sears points out that plaintiffs testified at their respective depositions that being paid less than their newly-hired White counterparts was the only discrimination to which he or she suffered. Citing *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364–65 (8th Cir.1983), and *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 402–03 (8th Cir.1995), Sears argues that the affidavits submitted by plaintiffs are thus contrary to and inconsistent with their deposition testimony and sworn EEOC charge and, as such, are "shams" that must be disregarded by the Court. *See* Def.'s Mem. of Law in Opp. to Pl.s' Mot. for Class Cert. at 6–7. The Court disagrees.

■ It is true that the Eighth Circuit has held a party cannot create a genuine issue of material fact in opposing a motion for summary judgment by submitting an affidavit contradictory to their deposition testimony, absent confusion on the part of the witness and an explanation of why the earlier testimony is in conflict with the affidavit. *See RSBI,* 49 F.3d at 402 (citing *Camfield,* 719 F.2d 1361). Plaintiffs point out, however, that they were not questioned at their depositions regarding the issues of placement, transfer and promotion despite these matters being made in the complaint. Pls' Reply Br. Regarding Class Cert. at 3. Moreover, plaintiffs are claiming in this lawsuit that they and the putative class received less pay than their White counterparts at the University Store because of Sears' subjective decision making process with respect to placement, transfer, and promotion, *see id.* at 1, and plaintiffs argue, and this Court agrees, that one's pay may be affected by decisions regarding placement, transfer and promotion. *Id.* at 2–3. In short, the Court finds that plaintiffs' deposition testimony is consistent with their affidavits alleging such discrimination, and, accordingly, determines that plaintiffs have Article III standing to represent the putative class.

### B. *Scope of EEOC Charges*

Sears also argues that plaintiffs' Title VII claims are beyond the scope of the substantive and temporal scope of their EEOC charges. It argues that plaintiffs' EEOC charges only allege that Sears paid newly hired White non-commissioned sales associates at the University Store more

than they were earning, thus precluding consideration by this Court of any claims relating to hiring, initial assignment, promotion, and transfer, and that plaintiffs' EEOC charges only provide a basis for Title VII claims based on alleged conduct occurring after January 16, 1998 (180 days prior to the filing of the earliest charge). The Court will address these claims in turn.

### i. *Substantive Scope*

█ A Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, but the scope of the subsequent action is not necessarily limited to the specific allegations in the charge. *Nichols v. American National Ins. Co.*, 154 F.3d 875, 886 (8th Cir.1998). Rather, in determining whether an alleged discriminatory act falls within the scope of a Title VII claim, "the administrative complaint must be construed liberally" in order not to frustrate the remedial purposes of Title VII, and the plaintiff may seek relief "for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* at 886–87 (citations omitted). *See also Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222 (8th Cir.1994); *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir.1992). "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.' " *Kells v. Sinclair Buick—GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir.1988)).

█ It is true that plaintiffs Robinson, Atkinson, Droughn, Harris, Medley, Toombs, Watkins, and Williams essentially claim in their respective EEOC charges only that they are being paid less than their White counterparts because of their race, Black, *see* Compl. (Ex. 1–3, 5–9), while plaintiff Fitzpatrick likewise claims in his EEOC charge only that he is being

paid less than White employees because of his race, Asian. *Id.* (Ex. 4). As previously noted, however, the gist of plaintiffs' lawsuit is that Sears maintains a policy, practice, custom or usage of discriminating against plaintiffs and other persons based upon their race with respect to compensation, terms, promotions, privileges, and conditions of employment, *i.e.*, that they and the putative class received less pay than their White counterparts at the University Store because of Sears' subjective decision making process with respect to placement, transfer, and promotion. *See* Compl. at ¶ 10; Pls.' Reply Br. Regarding Class Cert. at 1. Had the EEOC investigated plaintiffs' claims of discrimination in pay as set forth in plaintiffs' EEOC charges, the investigation would have sought evidence of the actions and motivations of Sears relating not only to plaintiffs' pay, but to other circumstances that would tend to demonstrate Sears' motives or attitudes. *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 673 (8th Cir.1994). Such an investigation would reasonably be expected to uncover evidence relating to Sears' allegedly discriminatory employment practices in job assignment or placement, pay and promotion. Compl. at ¶ 10. These allegations are not a separate theory of discrimination, at least in the context of this lawsuit, and they do not involve a distinct discriminatory action that is different in nature or distanced in time from their pay claims. The Court thus rejects Sears' argument that plaintiffs' Title VII claims are beyond the substantive scope of their EEOC charges.

### ii. *Temporal Scope*

█ Although plaintiffs' Title VII claims are not beyond the substantive scope of their EEOC charges, such claims must be limited to a certain time period. Specifically, Title VII requires that claimants exhaust their administrative remedies by filing a charge of discrimination within 180 days after the "alleged unlawful employment action occurred." 42 U.S.C.

§ 2000e–5(e)(1).[7] Job assignments, transfers, and non-promotions constitute completed acts at the time they occur and do not constitute continuing violations, even if some of the effects do not occur until later and are long-lasting. *See Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 229 (8th Cir. 1996); *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 167 (8th Cir.1995) (en banc). Thus, the time for filing an EEOC charge runs from the date of any such discriminatory act, *see Gipson*, 83 F.3d at 229, and all such discriminatory acts that occurred more than 180 days before the filing of said charge are time-barred under Title VII.

■ Unlike job assignments, transfers, and non-promotions, discrimination in rates of pay is an ongoing practice that constitutes a continuing violation. *See Ashley*, 66 F.3d at 167–68. Nevertheless, relief in such cases "back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past." *See id.* at 168. Thus, as with their other claims, plaintiffs will be limited to relief under Title VII, if any, for discriminatory rates of pay going back no more than 180 days from the filing of the EEOC charge.

■ There remains the question of determining the EEOC charge filing date upon which the 180 day period will be based. Courts have regularly held that the timely filing of an administrative charge by a named plaintiff in a class action satisfies the charge obligation of all members of the class. *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 616 (D.Minn.2000) (citing *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2nd Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991)). This is known as the "piggybacking" rule, and it will be applicable if two essential requirements are met: (1) the charge being relied upon must be timely and not otherwise defective; and (2) the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame. *Id.* (citing *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449 (11th Cir.1993)). These requirements have been satisfied in this case, and the 180 day period will therefore be determined on the basis of the earliest charge filed, which was by plaintiffs Robinson and Droughn on July 15, 1998. *See* Compl. (Ex. 1, 3). Thus, the time period for plaintiffs' Title VII class claims must begin no earlier than 180 days prior to July 15, 1998, or January 16, 1998.[8]

### C. *Statute of Limitations Issues*

An additional matter concerns the time period for plaintiffs' § 1981 and ACRA claims. The statute of limitations for a § 1981 action in Arkansas is three years, *see Martin v. Georgia–Pacific Corp.*, 568 F.2d 58, 62–63 (8th Cir.1977), while the statute of limitations for a claim under ACRA is one year after the alleged em-

---

**7.** In certain circumstances not applicable here, a plaintiff will have 300 days in which to file a charge of discrimination. *See id.* ("in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred ...").

**8.** Even were the Court to fully accept Sears' argument that plaintiffs' Title VII claims are beyond the substantive and temporal scope of their EEOC charges, plaintiffs also seek relief under § 1981, which does not require the administrative exhaustion procedures found under Title VII. *See, e.g., Winbush v. State of Iowa*, 66 F.3d 1471, 1486 (8th Cir.1995). In this regard, Title VII and § 1981 set forth parallel, substantially identical, legal theories of recovery in cases alleging intentional discrimination on the basis of race, and the availability of damages under § 1981 is broader than that of Title VII. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir.1997).

ployment discrimination occurred, or within ninety days of receipt of any right to sue letter from the EEOC, whichever is later. *See* Ark.Code Ann. § 16–123–107(c)(3). Under these standards, plaintiffs are entitled to relief under § 1981, if any, for alleged discrimination occurring no earlier than November 4, 1995 (three years prior to the filing of this lawsuit), and are entitled to relief under ACRA, if any, for alleged discrimination occurring no earlier than November 4, 1997 (one year prior to the filing of this lawsuit).

### D. *Time Period for Class*

Finally, the Court addresses the time period for the class. To this point, the Court has determined that the time period for plaintiffs' Title VII class claims must begin no earlier than January 16, 1998, that the time period for their § 1981 class claims must begin no earlier than November 4, 1995, and that the time period for their ACRA class claims must begin no earlier than November 4, 1997. As previously noted, however, the Court determines that plaintiffs' Title VII claims, § 1981 claims, and ACRA claims will be considered together and under the same standards. *See Roxas,* 90 F.3d at 315; *Henderson,* 217 F.3d 612, 615 n. 3; *Flentje,* 340 Ark. 563, 11 S.W.3d at 536–38; *Kim,* 123 F.3d at 1063. The question thus becomes which statute of limitations will control for purposes of defining the time period for the class.

■■■ With respect to plaintiffs' disparate treatment claims, this Court will utilize the longest statute of limitations applicable—that of § 1981—in establishing the time period for the class. Thus, insofar as plaintiffs' disparate treatment claims are concerned, the class certified in this action will be limited to individuals who suffered discrimination that is within the parameters of the class on or after November 4, 1995.

■■■ With respect to plaintiffs' disparate impact claims, however, § 1981's statute of limitations does not appear to be applicable as the Supreme Court has concluded that § 1981 can be violated only by purposeful discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 389–90, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Thus, a showing of disparate impact through a neutral practice is insufficient to prove a § 1981 violation because proof of discriminatory intent is essential. *See, e.g., Ferrill v. The Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir.1999). That being so, this Court will utilize the next longest statute of limitations applicable—that of ACRA—in establishing the time period for the class.[9] Accordingly, with respect to claims of disparate impact, the class certified in this action will be limited to individuals who suffered discrimination that is within the parameters of the class on or after November 4, 1997.[10]

\*     \*     \*     \*     \*     \*

**9.** Although the Court is not aware of any court to have specifically considered a claim of disparate impact under ACRA, such a claim would appear to fall within the scope of ACRA as the Act distinguishes between intentional employment discrimination and other "discriminatory practices" in employment for which "affirmative relief from the effects of the practices" is available. *See* Ark.Code Ann. § 16–123–107(c)(1)(A) and (2)(A). That being so, and because both the Arkansas Supreme Court and the Eighth Circuit Court of Appeals have applied Title VII analysis and law to ACRA claims, *see Flentje,* 340 Ark. 563, 11 S.W.3d at 536–38; *Henderson,* 217 F.3d 612, 615, this Court concludes that disparate impact claims as analyzed under Title VII

may be so analyzed under ACRA as well. *See* n. 5, *supra.*

**10.** In *Edwards v. Jewish Hosp. of St. Louis,* 855 F.2d 1345, 1351 (8th Cir.1988), the Eighth Circuit noted that *General Building* "eliminated from § 1981's sphere of liability those cases that have a disparate impact upon racial minorities *unless that impact can be traced to discriminatory purpose*" (emphasis added). The Court will revisit the question of the applicability of § 1981's statute of limitations to plaintiffs' disparate impact claims should it be shown that the challenged employment practices of Sears that allegedly had a disparate impact upon minorities "can be traced to discriminatory purpose," thus argu-

In sum, the Court determines that plaintiffs' have Article III standing to represent the putative class, that their Title VII claims are not beyond the substantive scope of their EEOC charges, that with respect to claims of disparate treatment, the class certified in this action will be limited to individuals who suffered discrimination that is within the parameters of the class on or after November 4, 1995, and that with respect to claims of disparate impact, the class certified in this action will at this time be limited to individuals who suffered discrimination that is within the parameters of the class on or after November 4, 1997. That established, the Court now proceeds to a determination of the appropriateness of a class action for resolution of plaintiffs' claims.

### E. *Rule 23(a)*

As previously noted, plaintiffs seek to certify a class of 932 current and former minority employees of Sears' University Store who allegedly "have been discriminated against by Sears' employment practices in hiring/initial job assignment and placement, pay and promotion." Mot. for Class Cert. at ¶ 1; Pl.s' Br. in Supp. of Mot. for Class Cert. at 2. Having carefully considered the matter, this Court finds that plaintiffs have met the requirements of Rule 23(a) as to the following individuals:

Current and former non-White hourly employees of Sears' University Store who allege acts of discrimination as follows:

1. That they were paid less than their White counterparts for the same work when the White employees had equal or lesser qualifications for the work;

2. That they were assigned to or placed in part-time positions even though they requested full-time positions, while White employees with equal or lesser qualifications were assigned to or placed in full-time positions;

3. That they were assigned to or placed in lower paying positions or departments while Whites with equal or lesser qualifications were placed in higher paying positions or departments;

4. That they were evaluated by Sears, the evaluations were conducted in an arbitrary and subjective manner, the evaluations were used to deny promotions and/or assignment to or placement in higher paying positions (whether in other departments or not) including, but not limited to, commissioned positions and, for part-time employees, full-time positions, and White employees with equal or lesser qualifications were promoted instead of non-White employees and/or assigned to or placed in those higher paying positions instead of non-White employees; and

5. That they either were not informed of job openings for positions that paid more than their current positions or otherwise were not promoted to such positions and, therefore, did not apply for or were not promoted to these open positions, and these positions were filled by White employees with equal or lesser qualifications. These higher paying positions to which non-White employees either did not apply or were not promoted include, but are not limited to, positions in other departments, commissioned positions and, for part-time employees, full-time positions.

In essence, then, the class will be limited to current and former non-White hourly employees of Sears' University Store who allegedly have been discriminated against by Sears' employment practices in job assignment or placement, pay and promotion in the manner set forth above. For disparate treatment claims, the class will be limited to individuals who allegedly suf-

ably bringing such a claim within the ambit of § 1981.

fered such discrimination on or after November 4, 1995. For disparate impact claims, the class will be limited to individuals who allegedly suffered such discrimination on or after November 4, 1997. With this class in mind, the Court now turns to the requirements of Rule 23(a).

### 1. *Numerosity*

■ Plaintiffs must demonstrate that the class is so numerous that joinder of all members is impracticable. A number of factors are relevant to this inquiry, the most obvious of which is the number of persons in the proposed class. *Paxton*, 688 F.2d at 559. No arbitrary rules regarding the necessary size of classes have been established. *Id.* (citing *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977)). In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762). *See also Parkhill v. Minn. Mutual Life Ins. Co.*, 188 F.R.D. 332, 337 (D.Minn.1999) (noting that what constitutes impracticability depends upon the facts of each case).

■ The Court determines that the current and former non-White hourly employees of Sears' University Store who allegedly have been discriminated against by Sears' employment practices within the relevant time period in job assignment or placement, pay and promotion in the manner set forth above makes joinder of all such individuals impracticable. The Eighth Circuit has approved a class of as low as 20 members, *see Arkansas Educ. Ass'n v. Bd. of Educ., Portland Ark. Sch. Dist.*, 446 F.2d 763 (8th Cir.1971), and "the plaintiff whose class is [larger than forty] should meet the test of Rule 23(a)(1) on that fact alone." 3 H. Newberg and A. Conte, Newberg on Class Actions § 3.05 at

3–25 (3d ed.1992). *Cf. Paxton*, 688 F.2d 552 (discharge of 53 African–Americans met numerosity requirement). In this regard, Sears appears to concede that the total number of putative class members would at least approach 99. *See* Def.'s Mem. of Law ·in Opp. to Pl.s' Mot. for Class Cert. at 33 (citing Pl.s' Ex. 48 at 3206 [1997 Utilization Analysis]). This Court agrees and, considering the nature of this case and the affidavits already of record, finds that the numerosity requirement has been satisfied.

### 2. *Commonality*

■ Plaintiffs also must demonstrate that there are questions of law or fact common to the class. Commonality under Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class, *see Paxton*, 688 F.2d at 561 (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.1974); *Like v. Carter*, 448 F.2d 798, 802 (8th Cir.1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972)), and may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *See id.* (quoting *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974)). *See also DeBoer*, 64 F.3d at 1174. Thus, factual differences are not fatal to maintenance of the class action if common questions of law exist. *Parkhill*, 188 F.R.D. at 338. Indeed, "there need be only a single issue common to all members of the class ... [t]herefore, this requirement is easily met in most cases." 3 Newberg and Conte, Newberg on Class Actions § 3.10 at 3–50. Nevertheless, with the Supreme Court's decision in *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740, allegations alone of a pattern and practice of discrimination are inadequate to satisfy the commonality require-

ment.[11] *See* 5 Newberg and Conte, Newberg on Class Actions § 24.21 at 24–89, 24–90. Rather, what is necessary is a specific showing of underlying facts which might raise an inference of a common question of pattern and practice through allegations of specific incidents of discrimination, supporting affidavits, or evidence at a certification hearing. *Id.* at 24–90. *See also Zachery v. Texaco Exploration and Production, Inc.*, 185 F.R.D. 230, 238 (W.D.Tex.1999) (noting that if broad discrimination is the only common denominator in the class, the commonality requirement will not be satisfied; rather, the class representative alleging class-wide racial discrimination must specifically enumerate the questions of law or fact common to the class). In this respect, "[a] pattern or practice is present when the discriminatory acts were not isolated, insignificant, or sporadic, but were repeated, routine, or of a generalized nature; in other words, discrimination must have been 'the company's standard operating procedure—the regular rather than the unusual practice.'" *Catlett v. Missouri Highway and Transportation Comm'n*, 828 F.2d 1260, 1265 (8th Cir.1987) (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 & n. 16, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

The affidavits submitted in support of plaintiffs' motion for class certification present specific underlying facts which might raise an inference of a common question of pattern and practice. For example, plaintiff Robinson claims that she was placed in the Men's Department despite requesting placement in the Children's Department, and that she was hired at a rate of $5.50 an hour, while four White employees hired into the Men's Department after her were hired at a pay rate of $6.00 and $6.50. Robinson Aff. at ¶¶ 3–5. Plaintiff Droughn likewise claims that she was placed in the Men's Department at a starting rate of $5.50, and that Black employees were training the new White employees who were hired in at a higher rate of pay and worked alongside the Black employees. Droughn Aff. at ¶¶ 3, 7. Plaintiff Harris, in turn, claims that she has requested a full-time position but to date has not been promoted to such a position, even though new White employees have received full-time positions and greater pay subsequent to her requests for full-time employment. Harris Aff. at ¶¶ at 6–8. She claims that those White employees were no better qualified and less qualified in some cases, and that those full-time positions were not posted or otherwise disclosed to her. *Id.* at ¶ 8. Plaintiff Harris goes on to claim that White associates are given better evaluations than minority associates, and that Sears' promotional requirements are arbitrary and applied on a subjective basis, as is the evaluative process. *Id.* at ¶ 16. The affidavits of the other named plaintiffs make similar allegations.

There are also in the record numerous affidavits of other current and former non-White employees of Sears' University Store detailing allegations of discrimination similar to those of the named plaintiffs. For example, Malcolm Aadil, an African–American male currently working in the Shipping & Receiving Department at Sears' University Store, claims that he requested a full-time position, but that two White employees hired after him were made full-time without those positions being posted. Aadil Aff. at ¶¶ 3–5. Amir Bey'ah, another African–American male currently working in the Shipping & Receiving Department of Sears' University Store, claims that Sears has hired White employees within the department at a higher rate of pay even though they did not have any more experience than he, and

---

**11.** In *Falcon,* the Supreme Court noted that "[s]ignificant proof than an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." 457 U.S. at 159 n. 15, 102 S.Ct. 2364.

that he requested full-time employment but that another White employee was hired and given a full-time position within the department without the position being posted. Bey'ah Aff. at ¶¶ 4–6. Similarly, Michael Tate, an African–American employee of Sears' University Store, claims he was assigned to the Replenishment Department over Footwear in 1993 and still works there today, even though he has asked for a promotion or transfer many times. Tate Aff. at ¶¶ 1–3. Tate claims that White employees in his department make more money than he does, that openings in other departments were filled without being posted, that White employees have been hired and given full-time hours despite his request for such hours, that a White manager blocked his request to be moved to the Bed & Bath Department, and that he was passed over for a supervisory position that was given to a White associate. Id. at ¶¶ 4–10. Affidavits of other current and former non-White employees of Sears' University Store make similar allegations.

In further support of plaintiffs' claim that they and the putative class received less pay than their White counterparts at the University Store because of Sears' subjective decision making process with respect to placement, transfer, and promotion, plaintiffs have submitted testimonial evidence suggesting that managers at Sears' University Store do in fact base employment decisions at least in part on subjective guidelines. For example, Brand Central Sales Manager, Scott Stacks, testified at his deposition that he has the discretion to determine qualifications for hire. Stacks' Depo. at 17. In this respect, Stacks hired the White wife of the number one producer at the McCain

Mall Sears Store without knowing her previous sales experience because, among other things, of her "attitude." Id. at 31. Similarly, Allen Davis, Sales Manager for Home Improvement, acknowledged subjective decision making by testifying at his deposition that if an individual is aggressive and can learn the product, they will be hired. Davis Depo. at 23. Indeed, as previously noted, Sears itself acknowledges that the employment decisions of department managers and human resources with respect to hiring, pay and promotions "contain elements of subjectivity," although it argues that such decisions are based on objective criteria as well. Def.'s Mem. of Law in Opp. to Pls' Mot. for Class Cert. at 14. In any case, such evidence, when considered with the affidavits and statistical evidence of record,[12] is sufficient to raise an inference of a common question of pattern and practice and leaves no doubt that there are questions of law or fact common to the class. See, e.g., Catlett, 828 F.2d at 1265 (noting that either statistical evidence showing disparity and/or anecdotal evidence recounting instances of discrimination against specific class members may be sufficient to establish a pattern or practice of discrimination).

In short, "[t]he presence of a discriminatory rule or practice, as well as a general policy of discrimination, have been held common issues in actions charging discrimination on the basis of race or sex," see 3 Newberg and Conte, Newberg on Class Actions § 3.10 at 3–52, 3–53, and plaintiffs in this case have produced evidence in support of their claim that they and the putative class received less pay than their White counterparts at the University Store

---

12. See, e.g., Pl.s' Ex. 47 (DOL report finding that minorities were over-represented in low-pay positions); Pl.s' Ex. 51 (June 13, 2000 statistical analysis prepared by Dr. Shapiro finding a disparity between White and minority employee pay attributable to differential job assignments unrelated to knowledge, skill, ability or interests, and finding that minority employees are statistically significantly disfa-

vored in all aspects of initial assignment and subsequent movements); Def.'s Ex 1 (statistical analysis prepared by Dr. Welch finding a "statistically significant" disparity between the pay rates for non-White employees and White employees due "primarily" to the difference in pay rates between commissioned jobs and hourly sales jobs).

because of Sears' subjective decision making process with respect to placement, transfer, and promotion. Plaintiffs seek declaratory and injunctive relief for these alleged discriminatory acts, and such a declaratory and injunctive nexus is sufficient to establish the requisite commonality. *DeBoer*, 64 F.3d at 1174. *Cf. Paxton*, 688 F.2d at 561 (noting that although bank's allegedly discriminatory promotion procedures would affect individual employees in different ways because of their diverse qualifications and ambitions, such factual variations are not sufficient to deny class treatment to the claims that have a common thread of discrimination); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1558 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) (noting that among plaintiffs, allegations of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operated to discriminate, would satisfy the commonality and typicality requirements of Rule 23(a), and that individual acts of discrimination could very likely be manifestations of a policy of discrimination).

### 3. *Typicality*

Plaintiffs also must demonstrate that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977)). "[T]he representative plaintiff must demonstrate that his or her factual circumstances or underlying legal theories are reasonably aligned or coextensive with the interests of the class members." 5 Newberg and Conte, Newberg on Class Actions § 24.27 at 24–110. The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern*, 84

F.3d at 1540 (quoting *DeBoer*, 64 F.3d at 1174). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citing *Donaldson*, 554 F.2d at 831). *See also* 5 Newberg and Conte, Newberg on Class Actions § 24.29 at 24–119, 24–124 (noting that the employment status of the plaintiff need not be identical to that of the class members or other plaintiffs, particularly when the representative plaintiff employees are subject to practices arising from the same course of conduct as the class members, such as the uniform administration of allegedly discriminatory policies).

The Court finds that the claims or defenses of the representative parties are typical of the claims or defenses of the class. As previously noted, there are in the record numerous affidavits of current and former non-White employees of Sears' University Store detailing allegations of discrimination similar to those of the named plaintiffs. The consistent theme in both sets of affidavits is that minority employees received less pay than their White counterparts at the University Store because of Sears' subjective decision making process with respect to placement, transfer, and promotion. Compare, for example, plaintiff Harris's affidavit (noting that new White employees received full-time positions and greater pay subsequent to her requests for full-time employment, that such employees were no better qualified and less qualified in some cases, and did not have an equal or greater amount of experience as a retail sales associate in the Men's Department as she did, and that those job openings were not posted, nor was she told about the job openings) with non-plaintiff Bey'Ah's affidavit (noting that Sears has paid him less money than White employees with less experience who do the same job and has kept him from becoming a full-time employee) and non-plaintiff Tate's affidavit (noting that there are

White employees in his department that make more money than he does but that he has not been given the opportunity to better his pay or position with Sears, that openings in other departments were filled but were never posted and he was never informed of the openings, that White employees have been hired and given full-time hours despite his request for such hours, that a White manager blocked his request to be moved to the Bed & Bath Department, and that he was passed over for a supervisory position that was given to a White associate). In short, typicality has been established as the alleged discriminatory acts upon which this lawsuit is based and the legal theories applicable to those discriminatory acts are essentially the same as between the named plaintiffs and the class delineated above.

### 4. Adequacy

Finally, it must be shown that the representative parties will fairly and adequately protect the interests of the class. The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Products,* 521 U.S. at 625, 117 S.Ct. 2231 (citing *Falcon,* 457 U.S. at 157–158, 102 S.Ct. 2364). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). The adequacy inquiry also factors in competency and conflicts of class counsel. *Id.* at 626 n. 20, 117 S.Ct. 2231 (citing *Falcon,* 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364). *See also Paxton,* 688 F.2d at 562–63 (noting that the focus of Rule 23(a)(4) is whether the class representatives have common interests with the members of the class, and whether the class representatives will vigorously prosecute the interests of the class through qualified counsel); 5 Newberg and Conte, Newberg on Class Actions § 24.30 at 24–126 (noting that vigorous prosecution and the absence of antagonistic interests are generally the central tests in a Rule 23(a)(4) analysis).

Sears does not seriously dispute the competency or qualifications of plaintiffs' counsel, and it does not argue that counsel has any conflicts of interest. In any case, this Court has considered the conduct of plaintiffs' counsel throughout the course of this litigation and finds that counsel are both competent and qualified to prosecute this class action, and that counsel have vigorously pursued the object of plaintiffs' lawsuit. In addition, no conflicts of interest on the part of counsel appear in the record.

Sears does argue, however, that plaintiffs are inadequate representative of the putative class. Specifically, Sears argues that plaintiffs are not members of and cannot represent a class of all minority employees, and that because plaintiffs are or were all hourly employees, they are not members of a class including non-hourly employees. Sears goes on to argue that plaintiffs have failed to adequately represent the interests of the putative class by their selection of Dr. Shapiro to perform a statistical analysis. The Court rejects these arguments.

As noted in *Amchem Products,* "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." 521 U.S. at 626 n. 20, 117 S.Ct. 2231 (quoting *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364). The Court has already found that the class will be limited to current and former non-White hourly employees of Sears' University Store who allegedly have been discriminated against by Sears' employment practices on or after November 4, 1995, in

job assignment or placement, pay and promotion in the manner set forth above. In this regard, the Court finds the plaintiffs' claims that they and the putative class received less pay than their White counterparts at the University Store because of Sears' subjective decision making process with respect to placement, transfer, and promotion present questions of law or fact common to the class, and that typicality has been established as the alleged discriminatory acts upon which this lawsuit is based and the legal theories applicable to those alleged discriminatory acts are essentially the same as between the named plaintiffs and the class delineated above. Thus, the plaintiffs are a part of the class as defined by this Court and possess the same interest and have suffered the same alleged injury as the class members.

■■■ Although Sears argues that several courts have criticized Dr. Shapiro's analysis, this Court is not concerned with any deficiencies on the part of Dr. Shapiro that may have existed in other cases and under other circumstances, but is only concerned with Dr. Shapiro's analysis in this case. As it now stands, Dr. Shapiro's June 13, 2000 report detailing his findings is properly of record and has not been stricken from the record or otherwise declared inadmissible. *See* n. 2, *supra.* Thus, plaintiffs' selection of Dr. Shapiro to perform a statistical analysis provides no basis for concluding that plaintiffs have failed to adequately represent the interests of the putative class.

\* \* \* \* \* \*

In sum, the Court finds that the prerequisites of Fed.R.Civ.P. 23(a)—numerosity, commonality, typicality, and adequacy—have been satisfied as to current and former non-White hourly employees of Sears' University Store who allegedly have been discriminated against by Sears' employment practices on or after November 4, 1995, in job assignment or placement, pay

and promotion in the manner set forth above.

### F. *Rule 23(b)(2)*

The Court additionally finds that this case is maintainable as a class action under Rule 23(b)(2). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class actions, *see Amchem Products,* 521 U.S. at 614, 117 S.Ct. 2231, and plaintiffs in this case charge Sears with unlawful, class-based discrimination and seek declaratory and injunctive relief of a type contemplated by Rule 23(b)(2). *See* Compl. at ¶¶ 10, 53–62; Mot. for Class Cert. at ¶¶ 25–26. *See also* 5 Newberg and Conte, Newberg on Class Actions § 24.81 at 24–265 (noting that the aptness of designating employment discrimination suits as class actions under Rule 23(b)(2) has been recognized repeatedly and definitively by the courts). *Cf. Paxton,* 688 F.2d at 563 (case seeking injunctive relief against class-wide race discrimination in bank's promotion practices was appropriately brought under Rule 23(b)(2)); *De-Boer,* 64 F.3d at 1175 (citing Wright & Miller for the proposition that if the Rule 23(a) prerequisites have been met and declaratory or injunctive relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)).

There is an issue concerning damages, however, that has caused the Court some difficulty. Plaintiffs state in the introduction to their complaint that they "seek compensatory and punitive damages based upon defendant's deliberate and willful violation" of the respective statutes under which they are proceeding. *See* Compl. at ¶ 2. In this regard, plaintiffs state in their prayer for relief that they request, in addition to relief that is declaratory and injunctive in nature, *id.* at ¶ 53–62, that Sears "[c]ompensate and make whole plaintiffs and the class they represent for all earnings, wages, and other benefits they would have received but for the discriminatory practices of defendant. . . ." *See* Compl. at

¶ 60.[13] The difficulty with this prayer for relief is that the advisory note to Rule 23(b)(2) explains that the subsection "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *See* Fed. R.Civ.P. 23(b)(2) advisory committee's note. Thus, "nonequitable monetary relief may be obtained in a class action certified under Rule 23(b)(2) only if the predominate relief sought is injunctive or declaratory." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 425 (5th Cir.1998). Notwithstanding this rule, plaintiffs specifically request that this action be maintained only under Rule 23(b)(2) without addressing or even acknowledging the complex issues raised by a prayer for compensatory and punitive damages in such a case. *See, e.g., Jefferson v. Ingersoll International Inc.*, 195 F.3d 894 (7th Cir.1999) (noting that it is an open question whether Rule 23(b)(2) ever may be used to certify a no-notice, no-opt out class when compensatory or punitive damages are at issue). As the Seventh Circuit explained in *Lemon v. International Union of Operating Eng., Local No. 139, AFL—CIO*, 216 F.3d 577 (7th Cir.2000), the problem with a request for compensatory or punitive damages in a Rule 23(b)(2) action

> is that Rule 23(b)(2) provides for binding litigation on all class members without guarantees of personal notice and the opportunity to opt out of the suit. By virtue of its requirement that the plaintiffs seek to redress a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members. A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that pre-sumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim.

> Indeed, in recognition of the potential divergence of interests within the class, each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 2314–15, 144 L.Ed.2d 715 (1999). Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Fed.R.Civ.P. 23(c)(2). However, the Federal Rules of Civil Procedure do not provide comparable guarantees of those rights for a class certified under subsections (b)(1) or (b)(2), and as a result, Rule 23(b)(2) certification does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages.

*Id.*, 216 F.3d 577, 580.

In noting the difficulty with a prayer for compensatory and punitive damages in a Rule 23(b)(2) action, the Court recognizes that a request for damages that is merely incidental to a prayer for declaratory and injunctive relief does not affect the maintenance of a case as a class action under Rule 23(b)(2). *See, e.g., DeBoer*, 64 F.3d at 1175 (citing *Paxton*, 688 F.2d at 563). The request for compensatory damages in the case at bar, however, appears to be more than "incidental." The Fifth Circuit in *Allison* defined "incidental" as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." 151 F.3d 402, 415. Incidental damages, thus, do not de-

---

**13.** Plaintiffs do not mention punitive damages in their prayer for relief, and the status of any request for an award of punitive damages is thus unclear.

pend "in any significant way on the intangible, subjective differences of each class member's circumstances" and do not "require additional hearings to resolve the disparate merits of each individuals's case." *Id.* *See also Lemon,* 216 F.3d 577, 580; *Jefferson,* 195 F.3d at 898. Here, determining "earnings, wages, and other benefits [plaintiffs and the class they represent] would have received but for the discriminatory practices of defendant ...," *see* Compl. at ¶ 60, depends on an individualized analysis of each class member's circumstances and requires hearings to resolve the disparate merits of each individual's case. *See Lemon,* 216 F.3d 577, 581 (citing *Allison,* 151 F.3d at 417). Likewise, an award of punitive damages (should plaintiffs be pursuing such an award) would require a fact-specific inquiry into the individual plaintiff's circumstances. *Id.* (citation omitted). *See also Faulk v. Home Oil Co.,* 186 F.R.D. 660, 662 (M.D.Al.1999).[14]

Because plaintiffs seek certification exclusively under Rule 23(b)(2), the question remains how this class action can be so maintained having determined that the request for damages is not incidental to the prayer for declaratory and injunctive relief. The Seventh Circuit in *Jefferson* and *Lemon* outlined three alternative procedures for handling such a case: (1) certify the class under Rule 23(b)(3) for all proceedings; (2) certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages (divided certification); and (3) certify the class under Rule 23(b)(2) for both monetary and equitable remedies but exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3). *Jefferson,* 195 F.3d at 898–99; *Lemon,* 216 F.3d 577, 581–82.

■ This Court has carefully considered the matter and will utilize the third procedure outlined by the Seventh Circuit. Such a procedure comports with the Eighth Circuit's decision in *DeBoer,* 64 F.3d at 1175, in which the Court held that a class action should be allowed to proceed under subdivision (b)(2) if Rule 23(a)'s prerequisites have been met and declaratory or injunctive relief has been requested (as is the case here), while at the same time providing class plaintiffs personal notice and the opportunity to opt out, as though the class were certified under subsection (b)(3). *See Lemon,* 216 F.3d 577, 582.

In adopting for this case the third procedure outlined by the Seventh Circuit, the Court recognizes that *DeBoer* held that "[w]hen either subsection (b)(1) or (b)(2) is applicable, ... (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." 64 F.3d at 1175. The court in *DeBoer* was not, however, addressing a race discrimination case such as this in which a request for damages is not incidental to the prayer for declaratory and injunctive relief and certification is sought exclusively under Rule 23(b)(2), but, rather, was addressing escrow accounting practices of a mortgage company in which "[t]he relief sought in the action is the same regardless of the amount of overage in any particular account." *Id.* *DeBoer,* then, did not foreclose the possibility that a district court might, in appropriate circumstances, certify a class under Rule 23(b)(2) for both monetary and equitable remedies but provide all class members with the protections envisioned by Fed.R.Civ. 23(c)(2) as though the class were certified under Rule 23(b)(3). This Court determines that such

---

**14.** Punitive damages are available in claims under Title VII where the employer has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of an individual. *Kolstad v. American Dental Assn.,* 527

U.S. 526, 119 S.Ct. 2118, 2121, 144 L.Ed.2d 494 (1999) (citing 42 U.S.C. § 1981a(b)(1)). *See also Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1007–09 (8th Cir.2000) (discussing *Kolstad* ).

a procedure is appropriate for adjudication of this particular case and, therefore, it is that procedure which will be applied.

### G. *Burden of Proof*

The Court now addresses the burden of proof with respect to plaintiffs' claims of disparate treatment and disparate impact.

### 1. *Disparate Treatment*

■ Claims of disparate treatment turn on one basic issue: " 'whether the employer intentionally treated some people less favorably than others because of their race, color, religion, sex, or national origin.' " *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 468–69 (8th Cir.1984) (quoting *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. 1843). *See also Reeves*, 120 S.Ct. at 2111 (noting that "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination"). Were this a private, non-class action Title VII case alleging disparate treatment, this Court would apply the *McDonnell Douglas* framework set forth previously in analyzing such a claim. *See, e.g., Kim*, 123 F.3d at 1056–57. However, for cases brought by private plaintiffs on behalf of many employees, charging that an employer engages in discriminatory practices throughout most or all of its operations, a different order of proof is prescribed. *Craik*, 731 F.2d at 469–70 (citing *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Teamsters*, 431 U.S. 324, 97 S.Ct. 1843). First, in the liability phase of the action,[15] the plaintiff must prove by a preponderance of the evidence that the defendant engaged in a pattern or practice of unlawful discrimination in various company policies, that discrimination, as previously noted, " 'was the company's standard operating procedure— the regular rather than the unusual practice.' " *Id.* at 470 (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843). *See also Cat-*

*lett*, 828 F.2d at 1265. "Normally, the plaintiff will produce statistical evidence showing disparities between similarly situated protected and unprotected employees with respect to hiring, job assignments, promotions, and salary, supplemented with other evidence, such as testimony about specific incidents of discrimination." *Craik*, 731 F.2d at 470. In rebuttal, the defendant will attempt to show that the plaintiff's " 'proof is either inaccurate or insignificant.' " *Id.* (quoting *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843). If the defendant fails, the " 'trial court may then conclude that a violation has occurred and determine the appropriate remedy.' " *Id.* (quoting *Teamsters*, 431 U.S. at 361, 97 S.Ct. 1843).

■ If the plaintiff proves that the defendant engaged in a pattern or practice of discrimination, not only is the class's eligibility for appropriate prospective relief established, a prima facie case is also established for the remedial phase of the suit, in which relief for individuals is considered. *Id.* (citing *Teamsters*, 431 U.S. at 359, 97 S.Ct. 1843). The Court thus presumes that the employer unlawfully discriminated against individual class members. *Id.* "In pattern or practice cases, however, the presumption shifts to the employer not only the burden of production, but also the burden of persuading the trier of fact that it is more likely than not that the employer did not unlawfully discriminate against the individual." *Id.*

> The [plaintiffs] need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination.... [T]he burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.

*Id.* (quoting *Teamsters*, 431 U.S. at 362, 97 S.Ct. 1843). The burden of persuasion

---

**15.** The trial of class actions is usually bifurcated into a liability phase and a remedial

phase. *Craik*, 731 F.2d at 470 (citing *Teamsters*, 431 U.S. at· 360–62, 97 S.Ct. 1843).

shifts to the employer with regard to the claims of both named plaintiffs and un-named class members. *Id.* (citing *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1136–38 (8th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981)).

In employing the burden-shifting presumption of *Teamsters,* the Court notes that neither statistical nor anecdotal evidence is automatically entitled to reverence to the exclusion of the other, and that evidence relating to the individual claims will be considered in the assessment of the class claims, and vise-versa, since evidence relevant to one is also relevant to the other. *Coates v. Johnson & Johnson,* 756 F.2d 524, 533 (7th Cir.1985). *See also Craik,* 731 F.2d at 471–72 (noting that statistical and other evidence is relevant to individual claims because "it is often a telltale sign of purposeful discrimination," and that evidence of specific incidents of alleged discriminatory treatment is relevant to the class claims because it may bring "cold numbers convincingly to life") (quoting *Teamsters,* 431 U.S. at 339, 340 n. 20, 97 S.Ct. 1843). The class claim is to be considered first, since if the class claim has merit, the named and unnamed individual class members are entitled to the burden-shifting presumption of *Teamsters. See Coates,* 756 F.2d at 533 (citing *Craik,* 731 F.2d at 471).

### 2. *Disparate Impact*

▉▉▉▉ To prove discrimination under the theory of disparate impact, a plaintiff must identify a facially-neutral employment practice, demonstrate a disparate impact upon the group to which he or she belongs, and prove causation. *Langlie v. Onan Corp.,* 192 F.3d 1137, 1140 (8th Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1719, 146 L.Ed.2d 641 (2000) (quoting *Lewis v. Aerospace Community Credit Union,* 114 F.3d 745, 750 (8th Cir.1997), *cert. denied,* 523 U.S. 1062, 118 S.Ct. 1392, 140 L.Ed.2d 651 (1998)). To prove a prima facie case of causation, a plaintiff must offer statistical evidence of a kind and degree sufficient to raise an inference that the practice in question has caused significant adverse effects on the members of a protected group because of their membership in the group. *Id.* (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). The burden then falls on the employer "to demonstrate that the challenged practice is job related ... and consistent with business necessity." *Allen v. Entergy Corp., Inc.,* 193 F.3d 1010, 1013 (8th Cir. 1999). If the employer meets its burden, the burden then shifts to the complaining party to show that another practice or practices, without a similarly undesirable impact on members of the protected group, would also serve the employer's legitimate business interests. *Id.* at 1013 n. 4.

### H. *Appeal pursuant to Rule 23(f)*

One final matter concerns Sears' right to appeal today's Order. Rule 23(f) of the Federal Rules of Civil Procedure provides that "[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class certification under this rule if application is made to it within ten days after entry of the order." The rule further provides that "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." *Id.* Although not addressed by the Eighth Circuit, other courts have found that there are generally three categories of cases upon which Rule 23(f) rests. First, an appeal ordinarily should be permitted when a denial of class status effectively ends the case. Second, an appeal ordinarily should be permitted when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle. Third, an appeal ordinarily should be permitted when it will lead to clarification of the law. *See Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 293 (1st Cir.2000) (citing *Blair v. Equifax*

*Check Services, Inc.,* 181 F.3d 832 (7th Cir.1999)).

The Court would note that this case arguably falls within the third category, even if such an appeal "should be restricted to those instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Waste Mgt.,* 208 F.3d at 294.[16] It is not clear that plaintiffs will prevail at the trial of this matter, and an appeal of this Court's ruling that a district court might certify a class under Rule 23(b)(2) for both monetary and equitable remedies but provide all class members with the protections envisioned by Fed.R.Civ. 23(c)(2) as though the class were certified under Rule 23(b)(3) will permit the resolution of an unsettled legal issue in this Circuit that is important to this particular litigation as well as important in itself.[17] In this regard, the Court would consider staying the proceedings were it asked to do so.

### III. *Conclusion*

For the foregoing reasons, the Court finds that Sears' motion for summary judgment with respect to plaintiffs' individual claims of discrimination should be and hereby is denied. The Court further finds that plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23(a) and (b)(2) and that their motion for class certification should be and hereby is granted as modified by today's Order. The Court hereby certifies a class consisting of current and former non-White hourly employees of Sears' University Store who allegedly have been discriminated against by Sears' employment practices in job assignment or

placement, pay and promotion in the manner and time periods set forth above.

---

**16.** This assumes, of course, that the Eighth Circuit would accept *Waste Management*'s characterization of Rule 23(f).

**17.** Sears also may be able to fit this case within the second category, although it would have to demonstrate that this Court's ruling on class certification "is questionable—and

must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Waste Mgt.,* 208 F.3d at 294 (quoting *Blair,* 181 F.3d at 835).